(No. 64804.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WILLIE THOMAS, Appellant.

*Opinion filed September 27, 1989.*

Charles M. Schiedel, Deputy Defender, and Gary S. Rapaport and Timothy M. Gabrielsen, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley and Cecil A. Partee, State's Attorneys, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund, Kevin Sweeney and Gael M. O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CALVO delivered the opinion of the court:

Defendant, Willie Earl Thomas, was indicted in the circuit court of Cook County on two counts of murder (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (a)(2)), one count of armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2), and one count of indecent liberties with a child (Ill. Rev. Stat. 1983, ch. 38, par. 11—4(a)(1)) in violation of the Criminal Code of 1961. The armed violence count was subsequently nol-prossed by the State. Defendant was tried by a jury and found guilty on the remaining counts of murder and indecent liberties with a child. At defendant's death penalty hearing, the jury found defendant eligible for capital punishment on the basis of a stipulation that the decedent was killed in the course of the offense of indecent liberties. The jury found no mitigating circumstances sufficient to preclude imposition of the death penalty. Defendant was thereupon sentenced to death on the murder charges and to a 30-year extended term of imprisonment on the indecent liberties charge. Defendant's post-trial motion was denied, and he brings a direct appeal to this court (Ill. Const. 1970, art. VI, §4(b); 107 Ill. 2d R. 603).

Defendant has raised numerous issues for our consideration. Our review of the record reveals one issue to be

dispositive of the appeal: Was defendant denied effective assistance of counsel by his attorney's contemporaneous representation of an informant/witness against defendant? We believe defendant was denied effective assistance of counsel because his attorney labored under a *per se* conflict of interest; therefore, we reverse defendant's convictions and remand the cause for a new trial. We will briefly summarize the facts as they pertain to this issue.

The body of 15-year-old Laura Lee Trass was discovered along a driveway in Harvey, Illinois, on the morning of May 20, 1984. Trass had been stabbed numerous times and had been disemboweled. Seminal material was discovered on the decedent's panties and jeans.

While on routine patrol on the evening of May 20, 1984, Chicago police officers were approached by Madis Lacy, defendant's cousin. Lacy allegedly told the officers she had seen bloodstains in defendant's car and had been informed by defendant's wife that defendant had "gutted" a girl in Harvey. Lacy gave the officers a picture of defendant and defendant's mother's address. Later, Lacy contacted the police to advise them that she had been warned by defendant's mother that defendant was about to flee and had said he would not be taken alive. After speaking with Lacy, police officers proceeded to defendant's mother's home in Chicago, where they placed defendant under arrest. Prior to making the arrest, officers corroborated Lacy's statements only to the extent of verifying that a girl's body had been found in Harvey.

Defendant was transported to Harvey, where he was informed of his *Miranda* rights and gave a statement to police. Defendant stated that he was driving in Harvey during the early morning hours of May 20, 1984, when he encountered Laura Lee Trass, a prostitute he had known. In response to Trass' inquiries about money he owed her, defendant assured Trass that he had the

money and would pay her if she would have sex with him again. Defendant and Trass drove to a secluded location where, in the back seat of defendant's car, they had "an affair" consensually. They returned to the front seat and, shortly thereafter, Trass indicated she had to leave. As she opened the door, defendant pulled a knife and began stabbing her. Trass jumped out of the car and defendant followed, repeatedly stabbing her, and continuing to stab her after she fell to the ground. Defendant then pulled down her pants and cut her abdomen. When he got home, he told his wife he had stabbed Trass. The next morning defendant's wife advised him that there was blood "all over the car."

Sometime in late May of 1984, defendant retained attorney Cassandra Watson to represent him. Watson filed a motion to suppress the confession on January 7, 1985, amendments thereto on July 21, 1985, and a motion to quash arrest and suppress evidence on July 21, 1985. The latter motion was premised on the contention that the police arrested defendant without a warrant or probable cause. Defendant's suppression hearing commenced on March 31, 1986, and concluded on June 2 when the court denied defendant's motions.

From circuit court documents in another case which were supplemented to the record on appeal without objection, it appears that attorney Watson undertook the representation of Madis Lacy on a 1984 charge of welfare fraud no later than January 9, 1985. Records from that case, which were apparently not brought to the attention of the circuit court, but which we may consider on appeal (see *People v. Guest* (1986), 115 Ill. 2d 72, 114), indicate that Watson filed a motion to suppress Lacy's confession on April 9, 1985, and amendments thereto on July 9, 1985. Although the documents from Lacy's pending criminal case do not reveal when Watson's representation of Lacy terminated, clearly, Watson

was still representing Lacy on April 21, 1986, at the time of defendant's suppression hearing. On that date, Watson filed an answer to the State's request for discovery in Lacy's case.

It was the State, rather than Watson, that first apprised the trial court of Watson's contemporaneous representation of defendant and Lacy. After defendant's suppression hearing—where officers testified regarding Lacy's statements, but where Lacy was not called as a witness—a pretrial hearing was held on November 13, 1986, wherein the prosecutor informed the court that Madis Lacy was a State witness and that Watson was attorney of record in Lacy's pending felony case. The following colloquy ensued:

> "THE PROSECUTOR: Now, I don't know if that's going to present a problem as far as the Court is concerned or as far as, you know, conflicts and what not. I thought it should just be made of record in case it, you know—In case it comes up at some point in the future.
>
> THE COURT: Is that true, Miss Watson? Are you representing a witness?
>
> MS. WATSON: That's true, Your Honor, yes.
>
> THE COURT: That case has not been disposed of?
>
> MS. WATSON: No, it has not, Judge.
>
> THE COURT: All right. The record will reflect that problem. If it becomes a meaningful issue in the trial of this case we may have to hear more about it. As of the moment the Court is not proposing to do anything."

When Madis Lacy was subsequently called as a State witness at defendant's trial, she either denied making statements attributed to her or stated she could not remember making them. On cross-examination, Watson questioned Lacy regarding her history of mental illness, suggesting that Lacy honestly could not remember her earlier statements to police in an attempt to blunt any inference that Lacy was lying to protect defendant, her relative. On redirect, the prosecutor attempted to estab-

lish that Watson represented Lacy in a pending case. Objections to that line of questioning were sustained.

After police officers testified that Lacy had, indeed, made statements to them inculpating defendant and leading to his arrest, Watson informed the court that she intended to elicit testimony from another witness "as to the hospitalization and mental condition of Mattie Lacy." The State informed the court that it would respond by raising the fact of Watson's representation of Lacy in the pending criminal matter. The State reasoned that there would be "a natural inclination" of Lacy to help her attorney and, therefore, the jury should be apprised of the relationship. The court indicated it was prepared to allow the State to expose the professional relationship between Watson and Lacy if Watson proceeded with her intended line of inquiry. Watson subsequently refrained from pursuing that line of inquiry.

In defendant's post-trial motion, Watson claimed that the court erred in:

> "not allowing defense testimony as to the extensive psychiatric history of Madis Lacy *** when it was Miss Lacy's statement which formulated the basis for the defendant's arrest and detention so that the jury was thereby unable to evaluate the credibility of the witness' testimony on this issue."

Watson made no mention of her dual representation of Lacy and defendant or possible conflicts arising therefrom. Defendant's post-trial motion was denied and this appeal followed.

Defendant's attorney, Cassandra Watson, had a duty to advise the court of her representation of one of the State's witnesses before this trial commenced.

She surely knew a conflict would develop when she attempted to attack the credibility of her client on cross-examination and the prosecution would respond by raising the fact of her representation of the witness in a

pending criminal case. Under these circumstances, she certainly was ethically required to withdraw as counsel for defendant prior to trial.

An accused's sixth amendment right to effective assistance of counsel is a fundamental right. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708; *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.) The right to effective assistance of counsel under the sixth amendment entitles a criminal defendant to the undivided loyalty of counsel, free from conflicting interests or inconsistent obligations. (*People v. Flores* (1989), 128 Ill. 2d 66, 83.) Where facts presenting an attorney's possible conflict of interests are made known to the court, the court must ascertain the extent of the risk and take whatever measures are necessary to protect the accused's guarantee of effective assistance of counsel. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 484-85, 55 L. Ed. 2d 426, 434-35, 98 S. Ct. 1173, 1178-79.) Where defense counsel has represented a State's witness, a *per se* conflict of interests exists if the professional relationship between the attorney and the witness is contemporaneous with counsel's representation of defendant. (*Flores*, 128 Ill. 2d at 83; *People v. Free* (1986), 112 Ill. 2d 154, 168; *People v. Washington* (1984), 101 Ill. 2d 104, 110-13.) "In order to assure and protect [defendant's] rights, the defendant need not show prejudice in order to justify a reversal of his conviction if the attorney representing him has an actual or possible conflict of professional interests." (*Washington*, 101 Ill. 2d at 110.) In such an instance, prejudice is presumed. *Free*, 112 Ill. 2d at 167; *People v. Coslet* (1977), 67 Ill. 2d 127, 133; *People v. Stoval* (1968), 40 Ill. 2d 109, 113.

Whether or not we choose to characterize Madis Lacy as a "State" witness, attorney Watson's contemporane-

ous representation of Lacy and defendant undoubtedly presents a conflict of professional interests.

Initially, in its appellate brief, the State contended that the record did not conclusively show that Watson had begun actively representing Lacy by the time of defendant's trial. The State's position was founded upon Lacy's trial testimony wherein she stated she had not spoken to Watson prior to the date of her testimony. Aside from Watson's unequivocal statement to the court that she represented Lacy, since the filing of the State's brief the defendant has been allowed to file, without objection, documents affirmatively showing Watson's active representation of Lacy, commencing at a date prior to defendant's suppression hearing. Presumably, the State would now abandon its contention, and, in any event, we reject it.

The State next maintains that Lacy "allied herself with the defendant," thus no prejudice resulted to the defendant from the "so-called representation."

We note, initially, that on November 13, 1986, the State represented to the trial court that Lacy was a State witness. To the extent that the State is now attempting to claim Lacy was not a State witness, we find the claim disingenuous and unpersuasive. True, much of Lacy's trial testimony consisted of "I don't remember"; however, in repeatedly extracting that response from the witness, the prosecutor was able to pose his questions in a way that apprised the jury of Lacy's previous statements to police. Moreover, when police officers later testified concerning Lacy's statements to them, the substance of Lacy's statements was again brought before the jury in the guise of "impeachment." Furthermore, information Lacy had given to the police previously formed the foundation upon which the State built its case of probable cause at the defendant's suppression hearing. Under these circumstances, we believe Lacy can

be properly characterized as a State witness for the purpose of applying the *per se* conflict rule.

Even if this were not the case, we believe attorney Watson labored under a conflict of professional interests under circumstances such that prejudice must be presumed. We have observed in the record on appeal at least two instances where Watson's representation may have been affected by her dual representation. Therefore, defendant may have received something less than the "undivided loyalty of counsel" and the aggressive advocacy to which he was entitled.

The first such instance occurred during Watson's representation of defendant at the suppression hearing. As previously noted, Watson had filed a motion to quash defendant's arrest and suppress evidence which was based upon lack of probable cause to support defendant's arrest. Without the hearsay information provided by Madis Lacy, the State, in our view, had insufficient information to establish probable cause for defendant's arrest. Madis Lacy, as an informant providing hearsay information, logically should have been called to testify at defendant's suppression hearing since her veracity and basis of knowledge were highly relevant to a probable-cause determination. (*Illinois v. Gates* (1983), 462 U.S. 213, 230 n.6, 76 L. Ed. 2d 527, 543 n.6, 103 S. Ct. 2317, 2328 n.6; *People v. Tisler* (1984), 103 Ill. 2d 226, 236-38.) If Lacy admitted supplying information to the police, Watson would have been obliged to challenge her veracity and her basis of knowledge. If, on the other hand, Lacy denied making the statements in question, counsel could have used her denial to challenge the credibility of the police. Counsel may well have declined to call Lacy as a witness for fear of offending her in the course of examination and losing her business, or counsel may have felt that an attack on Lacy's veracity might later come to haunt Lacy in her felony case. In any event, the

failure to call Lacy as a witness would seem to have nothing to do with sound trial strategy in *defendant's* case.

The second instance of possibly inhibited representation occurred at trial. Watson informed the court that she was prepared to question Dorothy London on the matter of Madis Lacy's mental health in an attempt to show that Madis Lacy honestly did not remember providing essential information to police which led to defendant's arrest. The State threatened to expose the attorney-client relationship between Watson and Lacy if counsel proceeded along that line, and the court indicated that it would allow the State to do so. Watson chose to forgo her intended line of inquiry. The inference is unavoidable given Watson's vehement argument that the State should not be allowed to expose her professional relationship with Lacy: Watson altered her trial strategy to avoid revelation of the attorney-client relationship.

We have no way of knowing in what other ways counsel's effectiveness might have been affected by the conflict. The *per se* conflict rule is a means of protecting defendant's interests. In reversing defendant's convictions and remanding the case for a new trial, we reaffirm our commitment to the precepts set forth in *Stoval*, 40 Ill. 2d at 113, wherein we stated:

> "[S]ound policy disfavors the representation of an accused *** by an attorney with possible conflict of interests. It is unfair to the accused, for who can determine whether his representation was affected, at least, subliminally, by the conflict. Too, it places an additional burden on counsel, however conscientious, and exposes him unnecessarily to later charges that his representation was not completely faithful. In a case involving such a conflict there is no necessity for the defendant to show actual prejudice."

Although the State does not claim that defendant knowingly waived his right to representation by counsel unhindered by any conflict of interests, we note in passing that the record is devoid of any indication that defendant was aware of the possibility of conflict or its consequences, and there is certainly no knowledgeable waiver of defendant's right of record.

Since this cause must be retried, we will not address defendant's other issues on appeal, which need not arise upon retrial. For the foregoing reasons, defendant's convictions are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*