Docket No. 93806–Agenda 3–September 2003.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JESUS FIDEL MORALES, Appellee.

Opinion filed April 1, 2004.

JUSTICE GARMAN delivered the opinion of the court:

After a jury trial, the defendant, Jesus Fidel Morales, was convicted of first degree murder, solicitation to commit murder for hire, and conspiracy to commit murder in connection with the shooting death of Kedric Bell in Chicago on January 16, 1995. The appellate court reversed the conviction and remanded for a new trial on the ground that defense counsel labored under a 
per se 
conflict of interest that defendant did not waive. 329 Ill. App. 3d 97. We granted the State’s petition for leave to appeal pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315). For reasons that follow, we now reverse the judgment of the appellate court.

I. BACKGROUND

During 1994 defendant distributed large quantities of cocaine in Chicago and other cities in the Midwest. Jorge Hernandez was defendant’s superior in the drug distribution organization. He obtained the cocaine from Colombian sources and supplied it to defendant. Hernandez was also defendant’s “brother-in-law” because Hernandez’s sister, Olga Medina, was defendant’s girlfriend or “common law wife.”

Early in 1995, defendant was unable to pay approximately $200,000 he owed to Hernandez for drugs previously supplied. Hernandez threatened defendant and sent a courier to Chicago to collect. Defendant arranged for an extension of time and the courier left. Meanwhile, defendant asked an associate, Alexis Paredero, to look into hiring someone to kill Hernandez’s next courier. Defendant planned to make it appear that he had paid the debt but that the courier had later been robbed and killed by persons unknown. Paredero recruited a gang member, Malcolm “Prince” Ortiz, who agreed to commit the murder for $10,000. When Kedric Bell arrived in Chicago to collect on behalf of Hernandez, defendant told Paredero that it would be necessary to go ahead with the murder.

On January 15, 1995, Paredero set up a meeting between defendant and Ortiz, during which they agreed on the site of the killing, the weapon, payment of the fee, and other details. Later that evening, Paredero picked up Bell, who had been told that he would now be paid. Instead, Paredero delivered Bell to the murder site, where Ortiz and an associate, posing as police officers, pretended to arrest Bell and Paredero. Ortiz frisked Bell, took his pager, and then shot him to death.

Hernandez did not testify at trial. Paredero testified at length about how defendant conceived, helped plan, and paid for the murder. The State also introduced into evidence a 13-page written statement signed by defendant that corroborated Paredero’s testimony. Other witnesses testified concerning defendant’s drug dealing, Hernandez’s role as supplier, Kedric Bell’s reason for coming to Chicago, and statements made by defendant before and after the murder. At the sentencing hearing, the State introduced a letter written by Hernandez in September of 1995 to a purported member of a Colombian drug cartel stating that defendant and Olga Medina would take over Hernandez’s drug operation while Hernandez was in prison and that the Colombians should deal with them just as they had dealt with Hernandez.

The question before us arises because defendant’s retained counsel, Michael Blacker of Miami, represented Hernandez in Florida in connection with federal drug charges at same time he represented defendant at trial in this case. In open court during a pretrial hearing on defendant’s motion to suppress, in the presence of defendant and Blacker, Assistant State’s Attorney David Kelley apprised the court of Blacker’s representation of Hernandez, of the fact that Hernandez was a potential witness for the State, and of the potential conflict of interest that resulted from those facts. At Kelley’s request, the court asked defendant whether he understood what the assistant State’s Attorney had just said and whether, in light of the possible conflict, he wished to continue with Blacker as his counsel. Defendant answered the court’s questions affirmatively. The court accepted defendant’s purported waiver of the conflict without further inquiry. Blacker remained silent throughout the colloquy.

No statement by Hernandez was introduced into evidence against defendant at trial. At the sentencing phase the State introduced parts of a letter that Hernandez wrote from jail to a purported member of a Colombian drug cartel, in which he stated that defendant and Olga Medina would take over Hernandez’s drug business while Hernandez was in prison. Hernandez asked that the Colombians deal with defendant just as they had dealt with him. Attorney Blacker attempted to discredit the letter by introducing evidence that Hernandez was mentally unstable.

The posttrial motions that Blacker filed on behalf of defendant did not mention conflict of interest or ineffective assistance of counsel. Defendant claimed on appeal that Blacker’s contemporaneous representation of Hernandez created a conflict of interest that worked to deprive him of the effective assistance of counsel in violation of the sixth amendment (U.S. Const., amend. VI). The appellate court reversed defendant’s conviction on that basis. 329 Ill. App. 3d 97.

II. ANALYSIS

A

We review 
de novo 
the legal question whether the undisputed facts of record present a
 per se 
conflict. See 
People v. Miller
, 199 Ill. 2d 541, 545 (2002). A criminal defendant’s sixth amendment right to effective assistance of counsel includes the right to conflict-free representation. 
People v. Washington
, 101 Ill. 2d 104, 110 (1984).  In 
People v. Spreitzer
, 123 Ill. 2d 1, 14-19 (1988), we clarified the framework for deciding whether defense counsel’s conflict of interest violates the sixth amendment. Under 
Spreitzer
, we must first decide whether there was a 
per se 
conflict of interest. If there was a 
per se
 conflict, “there is no need to show that the attorney’s actual performance was in any way affected by the existence of the conflict.”
  Spreitzer
, 123 Ill. 2d at 15. That is, a 
per se 
conflict is grounds for reversal unless the defendant waived his right to conflict free counsel.  
Spreitzer
, 123 Ill. 2d at 17. We refer to this rule of automatic reversal as the “
per se 
rule.”

We have found a 
per se 
conflict when defense counsel had a contemporaneous relationship with the victim, the prosecution, or an entity assisting the prosecution. 
People v. Lawson
, 163 Ill. 2d 187, 211 (1994) (collecting cases). We have also found a 
per se
 conflict when defense counsel contemporaneously represented a prosecution witness. 
People v. Thomas
, 131 Ill. 2d 104, 111 (1989). Finally, we have found a 
per se 
conflict when defense counsel was a former prosecutor who had been personally involved in the prosecution of the defendant. 
Lawson
, 163 Ill. 2d at 217-18.

This case most closely resembles the cases in which defense counsel contemporaneously represented a prosecution witness, because Hernandez was a potential witness for the State. It is undisputed that Blacker had an attorney-client relationship with Hernandez while he represented defendant. The question becomes whether Hernandez’s relationship to the case triggers the 
per se 
rule.  
Spreitzer 
provides the rule that answers this question: A 
per se 
conflict is one in which “facts about a defense attorney’s status *** engender, 
by themselves
, a disabling conflict.” (Emphasis in original.) 
Spreitzer
, 123 Ill. 2d at 14. In this case, Hernandez was a potential witness and his out-of-court statements about defendant in a letter were admitted into evidence at sentencing.  However, the fact remains that he was never a witness.  Thus defense counsel never assumed the status of attorney for a prosecution witness.  We therefore hold that attorney Blacker’s simultaneous representation of Hernandez and defendant did not constitute a 
per se 
conflict of interest.

Defendant urges us to disregard Hernandez’s status as merely a potential witness and to agree with the appellate court that it is “evident that Hernandez was a person who could likely benefit from an unfavorable verdict for defendant.” See 329 Ill. App. 3d at 108.  In this record, however, we find no basis for concluding that Hernandez stood to gain from defendant’s conviction. The evidence in the record about the relationship between Hernandez and the defendant is speculative at best about where Hernandez’s interests lay during the time Blacker represented defendant. For example, the letter that Hernandez wrote to a purported member of a Colombian drug cartel indicates that at the time the letter was written, around nine months after the murder, Hernandez still trusted defendant enough to put him in charge of Hernandez’s drug operation. At another point the record shows that witnesses would testify that Hernandez stated that defendant killed the victim Bell, who was Hernandez’s courier. The record does not tell us how to reconcile Hernandez’s expressed trust in defendant with his statements that defendant killed Bell. In short, whether Hernandez wanted a particular result from defendant’s trial depends on unknown facts about Hernandez. Speculation that Hernandez might have stood to benefit from a verdict against defendant does not support application of the 
per se 
rule.

B

Defendant argues that, even if we find no 
per se
 conflict, he is nevertheless entitled to automatic reversal of his conviction without a showing that his attorney’s performance was affected by a conflict. Defendant relies on two premises. First, he argues that the trial court in this case had a duty under 
Holloway v. Arkansas
 either to appoint different counsel or to ascertain that the risk of a conflict was too remote to justify doing so. See 
Spreitzer
, 123 Ill. 2d at 18, citing 
Holloway v. Arkansas
, 435 U.S. 475, 484, 55 L. Ed. 2d 426, 434, 98 S. Ct. 1173, 1178 (1978). Second, he argues the trial court failed to fulfill its duty.

Defendant’s argument fails because the premise that 
Holloway
 applies to this case is mistaken. In 
Spreitzer 
we said that 
Holloway 
applies when “counsel brings the potential conflict to the attention of the trial court at an early stage.” 
Spreitzer
, 123 Ill. 2d at 18. In this case counsel for the State, not defense counsel, informed the court at an early stage about the possible conflict arising from Blacker’s representation of Hernandez. Our reference to “counsel” in 
Spreitzer 
refers only to defense counsel. In 
Holloway
, counsel for three codefendants timely moved for appointment of separate counsel, alleging that his clients’ interests would conflict at trial. The Supreme Court held that under those circumstances the trial judge must either appoint separate counsel or take adequate steps to ascertain that the risk of conflict is too remote to warrant doing so. 
Holloway
, 435 U.S. at 484, 55 L. Ed. 2d at 434, 98 S. Ct. at 1178. The Supreme Court recently confirmed that 
Holloway
’s rule of automatic reversal applies only when a trial court fails to respond appropriately to defense counsel’s objection to a representation. 
Mickens v. Taylor
, 535 U.S. 162, 168, 152 L. Ed. 2d 291, 302, 122 S. Ct. 1237, 1241-42 (2001). In 
Spreitzer 
itself, and on at least two other occasions, we declined to apply 
Holloway 
on the ground that defense counsel did not raise the issue of a conflict. 
Spreitzer
, 123 Ill. 2d at 22; 
People v. Kitchen
, 159 Ill. 2d 1, 29-30 (1994);
 People v. Jones
, 121 Ill. 2d 21, 29 (1988). In this case, neither defendant nor defense counsel suggested to the trial court that the representation of the defendant was actually or potentially hampered by counsel’s representation of Hernandez. Therefore, 
Holloway 
does not apply to this case.

C

Having determined that neither the 
per se 
rule nor 
Holloway 
applies to this case, we must determine whether the defendant has shown an actual conflict of interest. 
Spreitzer
, 123 Ill. 2d at 18, citing 
Cuyler v. Sullivan
, 446 U.S. 335, 350, 64 L. Ed. 2d 333, 348, 100 S. Ct. 1708, 1719 (1980). A defendant may establish a violation of his right to effective assistance of counsel by showing an actual conflict of interest that adversely affected his counsel’s performance. 
Sullivan
, 446 U.S. at 350, 64 L. Ed. 2d at 348, 100 S. Ct. at 1719. To do so, he must show “some specific defect in his counsel’s strategy, tactics, or decision making attributable to [a] conflict.” 
Spreitzer
, 123 Ill. 2d at 18. Speculative allegations and conclusory statements are not sufficient to establish that an actual conflict of interest affected counsel’s performance. 
People v. Williams
, 139 Ill. 2d 1, 12 (1990).

Defendant alleges that defense counsel Blacker’s performance was adversely affected by his conflicting duties to Hernandez in three ways. First, he alleges that Blacker was limited in his ability to cross-examine each witness who testified about Hernandez. Two witnesses, Osvaldo Marcial and Roger Ross, testified that they knew Hernandez. Other witnesses did not know Hernandez but testified about statements defendant made that indicated that he owed Hernandez money and that Hernandez was using threats to pressure him to pay. Marcial testified that while working for Hernandez he delivered 50 kilograms of cocaine to defendant in Chicago. Ross, who was Kedric Bell’s cousin and an associate of Hernandez, testified that Hernandez sent Kedric Bell to Chicago. Ross testified further that, after learning that Bell had been shot, he called Hernandez, who gave him defendant’s phone number. It is not apparent from the record that Blacker’s duties to Hernandez adversely affected his cross-examination of the two witnesses who knew Hernandez. We fail to understand how Blacker’s duties to Hernandez 
could 
have affected his cross-examination of the witnesses who could only testify about statements that the defendant made about Hernandez. Defendant fails to point to any specific defects in the cross-examination of any witness. Defendant’s bare allegation that Blacker’s cross-examination was somehow affected is insufficient.

Second, defendant asserts that Blacker was limited in his ability to cross-examine the DEA agent who testified concerning the letter that Hernandez wrote and which was entered into evidence against defendant at his sentencing hearing. Again, defendant offers nothing beyond the bare and legally insufficient claim that counsel’s cross-examination was adversely affected in some unspecified way.

Third, defendant asserts that Blacker was either unwilling or unable to disparage Hernandez during his opening statement and closing argument. However, Hernandez’s credibility was not at issue at trial because he was not a witness, and defendant does not explain why it would have made sense for Blacker to disparage Hernandez at those times. We note that when it clearly did make sense for Blacker to attack Hernandez’s credibility–at the sentencing hearing, after the State introduced into evidence parts of a letter that Hernandez wrote–Blacker did so. We conclude that defendant has not shown any specific defect in Blacker’s performance that we may attribute to conflicting duties that Blacker owed to Hernandez.

Defendant also asserts that Blacker was limited in his ability to cross-examine one witness, Roger Ross, because Blacker owed conflicting duties to Ross. Before Ross testified, Blacker informed the trial court that he had probably been privy to confidential information while consulting with Ross about the possibility of representing him on appeal from the denial of Ross’ motion to suppress. The evidence that Ross had moved to suppress led to the arrest of both Ross and Hernandez and to Ross’ eventual conviction on drug charges. The court ruled that Blacker could not cross-examine Ross about the facts and circumstances behind Ross’ arrest and conviction. However, the record indicates that the basis for the court’s ruling was the State’s objection that the material was irrelevant, not that Blacker had received confidences.

Defendant argues that Blacker’s inability to cross-examine Ross left the jury to assume the truth of Ross’ testimony that he was part of Hernandez’s drug operation, that Hernandez sent Bell to Chicago to collect a debt, and that Hernandez gave him the defendant’s name and phone number after Bell was killed. Defendant does not explain how cross-examination about the circumstances of Ross’ arrest could possibly have been used to attack Ross’ testimony. Speculation that cross-examination might have been useful somehow would not be enough to establish a defect in Blacker’s performance. Thus even if we assumed, contrary to what the record shows, that it was Blacker’s conflicting duties to Ross that limited his cross-examination, there is no reason to think that the limitation adversely affected Blacker’s performance.

Based on the foregoing, we conclude that the defendant has not established that defense counsel labored under an actual conflict of interest that adversely affected his performance.

III. CONCLUSION

Defendant has not shown that his sixth amendment right to the effective assistance of counsel was violated due to his trial counsel’s conflict of interest. He has established neither that counsel’s representation of Hernandez constituted a 
per se 
conflict of interest, nor that counsel’s performance was adversely affected by an actual conflict of interest. The appellate court, having reversed defendant’s conviction and remanded for a new trial, did not address certain claims defendant raised. Those claims are not before us. We therefore reverse the appellate court’s judgment and remand this cause to the appellate court for consideration of those of defendant’s claims that have not been decided.

.

Reversed and remanded.

JUSTICE KILBRIDE, specially concurring:

I concur in the majority’s decision but write separately because, although I agree with the result reached by the majority, I disagree with the majority’s reliance on a conflict of interest analysis. The majority should have decided this case on the waiver issue.

The majority concludes that to constitute a 
per se
 conflict, it is not enough that the State’s witness be a potential witness; rather, the State’s witness must be an actual witness in the case. Slip op. at 4. An “actual” conflict is not necessary to constitute a 
per se 
conflict; instead, there need only be a “potential” conflict. It is enough that the defendant’s attorney is representing or has represented a “potential” State’s witness. This court has consistently held that a “possible conflict of interest” dictated “application of a 
per se 
rule.” See 
People v. Lawson
, 163 Ill. 2d 187, 217-18 (1994); see also 
People v. Barrow
, 133 Ill. 2d 226, 254 (1989) (potential conflict of interest may have precluded attorney from properly cross-examining certain witnesses the State indicated it may call at trial); 
People v. Thomas
, 131 Ill. 2d 104, 111 (1989) (defendant need not show prejudice under the 
per se 
rule when his attorney had “ ‘an actual or possible conflict of professional interests’ ”), quoting 
People v. Washington
, 101 Ill. 2d 104, 110 (1984); 
People v. Franklin
, 75 Ill. 2d 173, 176 (1979) (
per se 
rule provides that where defense counsel is involved in an actual or potential conflict of interest, it is unnecessary for the defendant to establish actual prejudice).

It will not always be possible to know at the time of the disclosure of the potential conflict whether the State’s witness will “actually” testify. Here, when the State disclosed the potential conflict to the trial court, it stated that Hernandez “could potentially be a witness for the State in its case in chief, and even more likely perhaps in aggravation if the case would proceed *** for a death penalty sentencing.” Hernandez’s involvement in this case was addressed by both parties in opening statements, by nearly every witness at trial, and in closing arguments. If the State had called Hernandez to testify, both parties concede that a 
per se 
conflict would have developed. Accordingly, I would hold that defense counsel’s contemporaneous representation of defendant and Hernandez created a 
per se 
conflict of interest.

 I would, however, hold that defendant’s conviction should not be reversed because he was made aware of the potential conflict and knowingly waived his right to conflict-free counsel. The majority does not address the actual appellate court holding as briefed and argued by the parties. The appellate court decision was based on whether defendant’s waiver of any potential conflict of interest was knowing or intelligent. The majority opinion mentions in the background of the case that defendant waived the conflict in the trial court, but then makes no mention of this in the analysis. The defendant retained the attorney and then waived the potential conflict in open court. The appellate court decision should be reversed on the basis that defendant waived any potential conflict.

JUSTICE RARICK joins in this special concurrence.