# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Murphy*, 2013 IL App (4th) 111128

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ELLIOTT T. MURPHY, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-1128 |
| Filed | May 9, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for first degree murder and attempted first degree murder were reversed and the cause was remanded for a new trial on the ground that defense counsel's contemporaneous representation of defendant and a prosecution witness in an unrelated case constituted a *per se* conflict of interest. |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 09-CF-1471; the Hon. Timothy J. Steadman, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal

Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Alan D. Goldberg and Charles W. Hoffman (argued), both of State Appellate Defender's Office, of Chicago, for appellant.

Jay Scott, State's Attorney, of Decatur (Patrick Delfino, Robert J. Biderman, and Anastacia R. Brooks (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE APPLETON delivered the judgment of the court, with opinion.

Presiding Justice Steigmann and Justice Knecht concurred in the judgment and opinion.

## OPINION

¶ 1        A jury found defendant, Elliott T. Murphy, guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)) and attempt (first degree murder) (720 ILCS 5/8-4(a), 9-1(a) (West 2008)), for which the trial court sentenced him to consecutive prison terms of 55 years and 25 years. Defendant appeals. Because trial counsel labored under a *per se* conflict of interest, we reverse defendant's convictions and remand this case for a new trial.

¶ 2                              I. BACKGROUND
¶ 3                              A. The Charges
¶ 4        In September 2009, the State charged defendant and several other persons with first degree murder (720 ILCS 5/9-1(a)(1) (West 2008)), attempt (first degree murder) (720 ILCS 5/8-4(a), 9-1(a) (West 2008)), aggravated battery (720 ILCS 5/12-4(a) (West 2008)), robbery (720 ILCS 5/18-1 (West 2008)), and mob action (720 ILCS 5/25-1(a)(1) (West 2008)). The charges arose out of two incidents that took place in Decatur on August 24, 2009. In the first incident, a group of teenage boys battered and fatally injured Jerry Newingham near 540 West Sawyer Street. The second incident occurred shortly thereafter, in which they battered and severely injured Kevin Wilson in nearby Garfield Park. Allegedly, defendant was one of the attackers of Newingham and Wilson. Because defendant was 16 at the time of the attacks and hence was over the statutory age of 15, the State prosecuted him in adult criminal court pursuant to section 5-130(1)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/5-130(1)(a) (West 2008)).

¶ 5                      B. Shawn Stanley's Testimony in the Jury Trial
¶ 6        In defendant's trial, which took place in August 2011, the State called Shawn Stanley. During direct examination, Stanley testified he had no recollection seeing Wilson being

beaten on August 24, 2009, or of giving a statement to Detective Barry Hitchens regarding the beating.

¶ 7 Then, without objection, the prosecutor played for the jury People's exhibit No. 29, a videotape of the statement Stanley had given to Hitchens regarding the beating of Wilson. The State presented this statement as substantive evidence pursuant to section 115-10.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.1 (West 2008)). In the statement, Stanley told Hitchens that on August 24, 2009, he was sitting in a pavilion in Garfield Park with his girlfriend and that a man, who appeared to be drunk and asleep, was sitting at another table in the pavilion. A group of about 12 teenage boys came to the park and surrounded the man. The man stood up and tried to leave, but one of the boys punched him in the face, knocking him down. Then another boy stomped on the man's head. Several other boys joined in, stomping on his stomach, ribs, and face. Then the attackers ran out of the park.

¶ 8 In some photographs that Hitchens showed him, Stanley identified five of the attackers, including defendant. Stanley told Hitchens that defendant had been "the main one" stomping on the man; defendant had stomped on the man's face at least six or seven times.

¶ 9 After the prosecutor played for the jury the video recording of Stanley's statement to Hitchens, the assistant public defender, Howard Baker, cross-examined Stanley on statements he purportedly made to a Decatur park district ranger, Del Taylor, on the day of Wilson's beating. In his cross-examination, Baker brought out inconsistencies between what Stanley told Taylor and what Stanley told Hitchens weeks later. Bringing out the inconsistencies between these statements was all Baker did in his cross-examination of Stanley.

¶ 10                    C. The Verdicts and the Sentences

¶ 11 The jury found defendant guilty of murdering Newingham and of attempting to murder Wilson.

¶ 12 In December 2011, the trial court sentenced defendant to consecutive prison terms of 55 years and 25 years.

¶ 13        D. Appellate Counsel's Discovery That Baker Also Represented Stanley
                for a Time During the Pretrial Phase of Defendant's Case

¶ 14 The office of the State Appellate Defender (OSAD) was appointed to represent defendant in this appeal, and while working on the appeal, OSAD learned that, during the pretrial phase of defendant's case, Baker also represented Stanley in a separate criminal case. OSAD provides the following chronology.

¶ 15 On September 23, 2009, the trial court appointed Baker to represent defendant.

¶ 16 On October 1, 2009, Stanley's name appeared in a discovery disclosure by the State, a disclosure filed with the trial court and served on Baker.

¶ 17 On November 23, 2009, in People v. Stanley, Macon County case No. 2009-CF-1816, the State charged Stanley with first degree murder, armed robbery, armed violence,

aggravated battery with a firearm, and unlawful possession of cannabis with the intent to deliver it.

¶ 18   On December 2, 2009, Baker entered his appearance on Stanley's behalf in Macon County case No. 2009-CF-1816.

¶ 19   On April 1, 2010, Stanley's name appeared again in a discovery disclosure by the State in the present case, a disclosure filed with the trial court and served on Baker.

¶ 20   On April 15, 2010, Baker represented Stanley in a guilty-plea hearing in Macon County case No. 2009-CF-1816 (An earlier docket entry, dated January 27, 2010, says: "Cause assigned on the trial call of Judge White."). Stanley entered negotiated pleas of guilty to aggravated battery with a firearm and unlawful possession of cannabis with the intent to deliver it. The charges of murder, armed robbery, and armed violence were dismissed. The trial court sentenced Stanley to concurrent prison terms of six years and four years.

¶ 21   On August 12, 2011, the State called Stanley as a prosecution witness in defendant's trial, with Judge Steadman presiding. Baker still was representing defendant, and he cross-examined Stanley.

¶ 22                                    II. ANALYSIS
¶ 23                              A. Our Standard of Review
¶ 24   All the facts germane to this appeal appear to be undisputed. "When the record shows that the facts are undisputed, the issue of whether a *per se* conflict exists is a legal question that this court reviews *de novo*." *People v. Fields*, 2012 IL 112438, ¶ 19.

¶ 25                    B. The Two Primary Precedents Under Discussion
                           in This Appeal: *Dopson* and *Fields*

¶ 26   Defendant argues that Baker "operated under a *per se* conflict of interest under the controlling precedent of [the Fourth District's] decision in *People v. Dopson*, 2011 IL App (4th) 100014, as attorney Baker contemporaneously represented [defendant] in the present case, and represented prosecution witness Shawn Stanley in an unrelated criminal case."

¶ 27   The State counters that, in invoking our decision in *Dopson*, defendant ignores or overlooks the supreme court's more recent decision in *Fields*, which, according to the State, destroys an essential presupposition of *Dopson* and thereby renders that case invalid as a precedent.

¶ 28   To understand these opposing arguments, one must understand *Dopson* and *Fields*.

¶ 29                                    1. *Dopson*

¶ 30   In *Dopson*, the defendant alleged in his postconviction petition that his appointed trial counsel, John Wright, had provided ineffective assistance in that, while representing him, Wright represented Anna Trotter, the confidential informant who eventually testified against the defendant in his trial. *Dopson*, 2011 IL App (4th) 100014, ¶ 12. This concurrent representation did not exist throughout the defendant's entire case. Rather, there merely was

a period of overlap during the pretrial phase of the defendant's case, a period during which Wright represented both Trotter in two criminal cases against her as well as the defendant in his own separate case. By the time of the defendant's trial, however, Trotter's cases had been transferred to a different assistant public defender, Jim Tusek. *Id.* ¶ 7. Wright continued representing the defendant, and he cross-examined his former client, Trotter, in the defendant's trial. *Id.* ¶ 9.

¶ 31 The defendant argued he had been "denied his right to effective assistance of counsel because his attorney [(Wright)] was operating under a *per se* conflict of interest arising from his prior and contemporaneous representation of Trotter." *Id.* ¶ 12. We quoted the principle to which the defendant was alluding: "A *per se* conflict exists when 'defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution.' " *Id.* ¶ 25 (quoting *People v. Taylor*, 237 Ill. 2d 356, 374 (2010)). "In such instances," we said, "no more than defense counsel's prior or contemporaneous representation of the State's witness is necessary to establish a *per se* conflict." *Id.* ¶ 25.

¶ 32 The State argued, however, that two circumstances militated against the defendant's claim that Wright had contemporaneously represented him and Trotter: (1) Wright no longer was representing Trotter when the defendant's case went to trial, and (2) Wright's prior representation of Trotter did not involve any charges or facts that were relevant to, or " 'commingled' " with, the defendant's case. *Id.* ¶ 26.

¶ 33 We responded that the State was taking too narrow a view of " 'contemporaneous representation' " and was overlooking the potential for a clash of loyalties. *Id.* ¶ 28. One of the purposes of the *per se* conflict-of-interest rule was to ensure that defense counsel's cross-examination and impeachment of the State's witness was "thorough and unconstrained" (*id.* ¶ 29), "unhindered by the need to avoid privileged attorney-client information" (*id.* ¶ 27). Because the attorney-client privilege continued even after formal representation ended (*id.*), limiting the meaning of "contemporaneous representation" to "contemporaneous representation during trial" would have failed to ensure a zealous and uninhibited cross-examination of the State's witness: a pretrial attorney-client relationship with the witness could make for a timid cross-examination the same way a continuing attorney-client relationship with the witness could do so (*id.* ¶ 28).

¶ 34 This was not to suggest that, in order for the *per se* conflict-of-interest rule to be applicable, there actually had to be privileged attorney-client information that defense counsel, to the defendant's detriment, refrained from eliciting from the State's witness during cross-examination. "Whether such information existed, or would have been useful to the defense, [was] irrelevant because such questions concern[ed] whether the conflict resulted in prejudice and *** prejudice [was] beyond the scope of the *per se* conflict rule." *Id.* ¶ 27. The purpose of the *per se* conflict rule was to avoid not only actual prejudice but also the ambiguity of whether prejudice had resulted. We said: "The *per se* conflict rule is intended to avoid (1) unfairness to the defendant, who may not be able to determine whether his representation was affected by the conflict, and (2) putting the honest practitioner in a position where he may be required to choose between conflicting duties." (Internal quotation marks omitted.) *Id.* ¶ 23.

¶ 35     Wright might not have consciously chosen between conflicting duties, given his testimony, in the postconviction hearing, that "he did not recall whether he recognized Trotter as his former client at the time of [the] defendant's trial." *Id.* ¶ 34. Even so, to remain faithful to the purpose of the rule, we "impute[d] to [Wright] his recognition of the identity of those he [had] represent[ed], even after formal representation end[ed]." *Id.* Again, the purpose was to avoid not only actual prejudice, but ambiguity.

¶ 36     We summed up:

> "Here, the only question before us is whether Wright's representation of Trotter, clearly an 'entity assisting the prosecution,' was 'prior or contemporaneous' to Wright's representation of [the] defendant. *Taylor*, 237 Ill. 2d at 374, 930 N.E.2d at 971. The breadth of the *per se* conflict-of-interest rule reflects the importance of removing doubt in the minds of the convicted that they were afforded loyal, unconflicted representation at trial." *Id.* ¶ 35.

To remove any such doubt, we applied the *per se* conflict rule on the basis of "a realistic appraisal of defense counsel's professional relationship to someone other than the defendant," not on the basis of "technicalities of the law, such as whether or not the dual representation existed at the moment the trial commenced." (Internal quotation marks omitted.) *Id.* We concluded that Wright had been in a *per se* conflict of interest and that the defendant therefore had been denied the effective assistance of counsel. *Id.*

¶ 37                                    2. *Fields*

¶ 38     In *Fields* (which the supreme court decided after *Dopson*), the defendant was charged with sexually assaulting K.N.J. *Fields*, 2012 IL 112438, ¶ 4. The defendant previously was convicted of sexual offenses against another minor, C.S., and in the subsequent case, in which K.N.J. was the victim, the State called C.S. to prove the defendant's propensity to commit the charged offenses. *Id.* ¶ 7. The trial court had ruled this propensity evidence to be admissible under section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2006)). *Id.* ¶ 5.

¶ 39     In June 2008, the jury found the defendant guilty of the sexual offenses against K.N.J. *Id.* ¶ 8.

¶ 40     On appeal, the defendant argued ineffective assistance. He argued that his trial counsel, Edward Woller, had been in a *per se* conflict of interest because he served as guardian *ad litem* for C.S. in a case that ended in 2002 or 2003. *Id.* ¶ 9.

¶ 41     The guardian *ad litem* proceedings had no relation to either of the criminal cases against the defendant. *Id.* Nevertheless, the appellate court held that Woller had indeed labored under a *per se* conflict of interest and that the defendant therefore should receive a new trial. *Id.* ¶ 10. The appellate court noted that there were three situations in which a *per se* conflict of interest existed: "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved in the prosecution of the defendant." *Id.* See also *Taylor*, 237 Ill. 2d at 374 ("This court has identified three situations where a *per*

-6-

*se* conflict exists: (1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved in the prosecution of defendant."). According to the appellate court, the first of those three situations existed: C.S. was an "entity" assisting the prosecution, and Woller had a prior association with her in that he had served as her guardian *ad litem*. *Fields*, 2012 IL 112438, ¶ 10.

¶ 42    The supreme court disagreed with the appellate court. *Id.* ¶ 20. The term "entity," the supreme court explained, did not mean an individual person (*id.* ¶ 30); rather, it meant a nonindividual, such as a municipality (*id.* ¶ 33). C.S. was not an "entity" for purposes of the first situation in *Taylor*, and the second situation negated the defendant's theory of a *per se* conflict because it required "contemporaneous representation" as opposed to prior representation. *Id.* ¶ 29. The supreme court observed: "Illinois supreme court case law has clearly and consistently held that, in cases where defense counsel has represented a State's witness, a *per se* conflict of interest will not be held to exist unless the professional relationship between the attorney and the witness is contemporaneous with defense counsel's representation of the defendant." *Id.* ¶ 20. Woller did not represent C.S. at the same time he represented the defendant, and his prior representation of her did not create a *per se* conflict of interest. *Id.* ¶ 35.

¶ 43                    C. The Effect of *Fields* Upon *Dopson*

¶ 44    In the State's view, our decision in *Dopson* "lacks continuing vitality after *Fields* because *Dopson* erroneously considered a witness to be an 'entity assisting the prosecution' and thereby allowed a *per se* conflict to arise from a counsel's 'prior' representation of a prosecution witness."

¶ 45    It is true that, in *Dopson*, we described Trotter as "clearly an 'entity assisting the prosecution' " (*Dopson*, 2011 IL App (4th) 100014, ¶ 35 (quoting *Taylor*, 237 Ill. 2d at 374)), and it is true that, in light of the supreme court's subsequent decision in *Fields*, a witness for the State does not qualify as an entity assisting the prosecution (*Fields*, 2012 IL 112438, ¶ 30). So, here in a nutshell is the problem: We held, in *Dopson*, that the facts in that case conformed to the first situation described in *Taylor*: "defense counsel has a prior or contemporaneous association with *** an entity assisting the prosecution" (*Taylor*, 237 Ill. 2d at 374), but *Fields* thereafter kicked out an essential underpinning of that holding–*i.e.*, the presupposition that Trotter was an "entity"–causing the holding to collapse.

¶ 46    Did our discussion, in *Dopson*, of "contemporaneous representation" survive the collapse? See *Dopson*, 2011 IL App (4th) 100014, ¶¶ 27-28. The answer appears to be no. In *Dopson*, we did not make a rigorous distinction between prior and contemporaneous representation; we referred to the two in the alternative (*id.* ¶¶ 25, 35). We reasoned that, even though the defense counsel's "formal representation" of the State's witness had ended by the time of the defendant's trial, the defense counsel was still, in a manner of speaking, "representing" the witness by observing the ongoing attorney-client privilege, which possibly hindered the defense counsel when cross-examining the State's witness. *Id.* ¶¶ 27-28. That

reasoning does not survive *Fields*, either, and here is why. In *Fields*, the supreme court rejected the notion that the defense counsel's prior representation of the State's witness created a *per se* conflict of interest. *Fields*, 2012 IL 112438, ¶ 29 ("[T]his court has always held that a defense counsel's representation of a prosecution witness constitutes a *per se* conflict of interest when the representation is contemporaneous with defense counsel's representation of the defendant, but is not a *per se* conflict of interest when defense counsel's representation of the witness is prior to counsel's representation of defendant."). In the case of any such prior representation, defense counsel would remain bound by the ongoing attorney-client privilege. One must infer, then, from *Fields*, that this ongoing attorney-client privilege does not create a *per se* conflict of interest. See also *People v. Schaefer*, 188 Ill. App. 3d 317, 322 (1989) ("[T]he mere possession of confidential information does not preclude an effective cross-examination of a codefendant witness; furthermore, the burden of demonstrating the existence and materiality of the alleged confidential information lies with the defendant. [Citation.] Mere hypothetical or speculative conflicts will not suffice.").

¶ 47   Thus, we agree with the State that *Fields* has invalidated our analysis in *Dopson*. Even so, we arrived at the correct result in *Dopson*, as we will explain.

¶ 48   D. According to Case Law, Must the Contemporaneous Representation
Occur During the Trial, as Opposed to During the Pretrial Phase,
for There To Be a *Per Se* Conflict?

¶ 49   The State says: "After *Fields*, it should be undisputed that a *per se* conflict requires 'contemporaneous' representation by a counsel of a defendant and a prosecution witness. The problem then becomes identifying what the word 'contemporaneous' actually means in this context through examining how courts have applied that requirement in various factual scenarios."

¶ 50   Actually, there is no question as to what the word "contemporaneous" means; it means "existing, occurring, or originating at the same time." Merriam-Webster's Collegiate Dictionary 249 (10th ed. 2000). More precisely, the question is, When the supreme court says–over and over in *Fields*, for example–that a *per se* conflict of interest exists where defense counsel contemporaneously represents a prosecution witness (*Fields*, 2012 IL 112438, ¶¶ 18, 20, 22, 24, 25, 29), is that statement subject to an implied qualification that the contemporaneous representation must occur during the defendant's trial as opposed to during the pretrial phase of the defendant's case, in order for there to be a *per se* conflict of interest?

¶ 51   The State argues that "dual representation is contemporaneous only if the defendant's attorney is still representing the prosecution witness on the date of trial." The trouble with that argument is it would have us second-guess the plain meaning of words. As a matter of English, "dual representation" is "contemporaneous representation" because it is representation "occurring *** at the same time." Merriam-Webster's Collegiate Dictionary 249 (10th ed. 2000) A better way of putting the State's argument might be: the only contemporaneous representation that counts for purposes of the *per se* conflict rule is contemporaneous representation during trial. According to the State, cases before *Dopson*

-8-

found a *per se* conflict only in contemporaneous representation during trial, and *Dopson* was a radical and ill-supported extension of that rule to pretrial proceedings.

¶ 52 The primary cases the State cites as representative of the law before *Dopson* are *People v. Thomas*, 131 Ill. 2d 104 (1989), *People v. Flores*, 128 Ill. 2d 66 (1989), and *People v. Strohl*, 118 Ill. App. 3d 1084 (1983). We will discuss each of those cases in turn.

¶ 53 1. *Thomas*

¶ 54 The most recent of the three cases is *Thomas*. In *Thomas*, a jury found the defendant guilty of murder and indecent liberties with a child. *Thomas*, 131 Ill. 2d at 106. The victim was a 15-year-old girl, whose body was found by the side of a driveway in Harvey; she had been disemboweled, and semen was on her clothing. *Id.* at 107. The defendant's cousin, Madis Lacy, implicated the defendant. *Id.* She stopped some Chicago police officers and allegedly told them she had seen bloodstains in the defendant's car and that the defendant's wife had told her he "had 'gutted' a girl in Harvey." *Id.*

¶ 55 The defendant hired an attorney, Cassandra Watson, to represent him in the murder case, and after entering her appearance as the defendant's attorney, Watson undertook the representation of Madis Lacy in a separate criminal case charging her with welfare fraud. *Id.* at 108. "Although the documents from Lacy's pending criminal case [did] not reveal when Watson's representation of Lacy terminated, clearly, Watson was still representing Lacy on April 21, 1986, at the time of [the] defendant's suppression hearing," because that was the date when "Watson filed an answer to the State's request for discovery in Lacy's case." *Id.* at 108-09. So, in *Thomas*, it was clear that *Watson* was representing both the defendant and Lacy at the time of the defendant's suppression hearing, but it was unclear whether she still was representing Lacy while representing the defendant in his trial.

¶ 56 Nevertheless, according to the supreme court, contemporaneous representation was the single dispositive issue in *Thomas*. The supreme court said: "Our review of the record reveals one issue to be dispositive of the appeal: Was [the] defendant denied effective assistance of counsel by his attorney's contemporaneous representation of an informant/witness against [the] defendant?" *Id.* at 106-07. After so stating the issue, the supreme court said: "We believe [the] defendant was denied effective assistance of counsel because his attorney labored under a *per se* conflict of interest ***." *Id.* at 107. Then the supreme court said: "We will briefly summarize the facts as they pertain to this issue." *Id.* One of the facts the supreme court summarized was Watson's contemporaneous representation of the defendant and Lacy at the time of the defendant's suppression hearing. *Id.* at 108-09. Therefore, in the supreme court's view, contemporaneous representation during the suppression hearing was pertinent to the issue of a *per se* conflict.

¶ 57 Watson chose not to call Lacy to testify in the suppression hearing, even though, "as an informant providing hearsay information," "[Lacy's] veracity and basis of knowledge were highly relevant to a probable-cause determination." *Id.* at 113. The supreme court remarked: "[Watson] may well have declined to call Lacy as a witness for fear of offending her in the course of examination and losing her business, or counsel may have felt that an attack on Lacy's veracity might later come to haunt Lacy in her felony case." *Id.*

¶ 58    Ultimately, it was unknowable why Watson did not call Lacy in the defendant's suppression hearing. Likewise, it was unknowable whether calling Lacy would have helped the defense in the probable-cause determination. Definitively resolving those questions was unnecessary, for, as the supreme court held, if an attorney represented a State witness at the same time the attorney represented the defendant in his or her criminal case, there was a *per se* conflict of interest, and prejudice was presumed; prejudice did not have to be shown. *Id.* at 111.

¶ 59    Lacy could "be properly characterized as a State witness for the purpose of applying the *per se* rule," the supreme court said. *Id.* at 112-13. The status of Lacy as a State witness would have been irrelevant if, as the State would have us believe, the supreme court cared only about contemporaneous representation during trial when applying the *per se* conflict rule–because, again, it was unclear whether Watson was still representing Lacy at the time of the defendant's trial, but it was clear she was representing Lacy at the time of the defendant's suppression hearing, some eight months before trial (*id.* at 108-09). If one took the position that contemporaneous representation during the pretrial phase of a defendant's case did not count for purposes of the *per se* conflict rule, *Thomas* would be incomprehensible. The supreme court's discussion of Watson's potentially conflicting loyalties in the suppression hearing would be pointless.

¶ 60                                    *2. Flores*

¶ 61    In *Flores*, a jury found the defendant guilty of the armed robbery and murder of Gilbert Perez. *Flores*, 128 Ill. 2d at 75. On appeal to the supreme court, the defendant argued he had been "denied [his] sixth amendment guarantee of conflict-free representation of counsel because at the time of trial, defense counsel also represented one of the State's witnesses, Sammy Ramos." *Id.* at 82. This "dual representation," the defendant argued, "raised a *per se* conflict of interest which required counsel to withdraw as his attorney, and because counsel did not, he was denied a fair trial." *Id.*

¶ 62    The supreme court responded:

        "Contrary to what the defendant asserts, nothing in the record shows that defense counsel represented Ramos at the time of [the] defendant's trial. While defense counsel stated that he had 'previously' represented Ramos, he did not say that he represented him at that time or concerning Perez'[s] murder prior to trial. The defendant has failed to show an actual or *per se* conflict of interest on the part of defense counsel." *Id.* at 83.

¶ 63    As one can see from the quoted passage, the supreme court never really held, in *Flores*, that an attorney's contemporaneous representation of the defendant and of a witness for the State had to occur during the defendant's trial in order to be a *per se* conflict of interest. Instead, the defendant in *Flores* argued that, "at the time of trial, defense counsel also represented one of the State's witnesses, Sammy Ramos" (*id.* at 82), and the supreme court merely responded to that argument: "*Contrary to what the defendant asserts*, nothing in the record shows that defense counsel represented Ramos at the time of [the] defendant's trial." (Emphasis added.) *Id.* at 83. "A judicial opinion is a response to the issues before the court, and these opinions *** must be read in the light of the issues that were before the court for

-10-

determination." *Nix v. Smith*, 32 Ill. 2d 465, 470 (1965).

¶ 64                                    3. *Strohl*

¶ 65    In *Strohl*, a jury found the defendant guilty of murdering William Prather. *Strohl*, 118 Ill. App. 3d at 1087. The defendant argued, on appeal, that his trial counsel, Lonnie Lutz, had been in a *per se* conflict of interest in that Lutz had simultaneously represented the State's witness, Collin Runner. *Id.* at 1091.

¶ 66    "The [defendant's] trial commenced on August 24, 1982, and there [was] no showing in the record as to the disposition of Runner's case." *Id.* We said: "In the instant case there is no showing that Lutz was representing Runner on August 24, 1982. In fact, the fair inference *** is to the contrary, that Runner's case was closed. *** It follows that no *per se* conflict has been demonstrated." *Id.* at 1092.

¶ 67    *Strohl* could be interpreted as assuming that the *sine qua non* of a *per se* conflict is contemporaneous representation during a defendant's trial as opposed to contemporaneous representation during the pretrial phase. That assumption did not survive the supreme court's subsequent decision in *Thomas*.


¶ 68                   E. Additional Reasons To Find a *Per Se* Conflict in
                   Contemporaneous Representation During the Pretrial Phase

¶ 69                     1. *The Right to Effective Assistance by Counsel,*
                        *and Therefore to Unconflicted Counsel,*
                     *From the Very Initiation of the Criminal Proceedings*

¶ 70    The sixth amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to *** have the Assistance of Counsel for his defense." U.S. Const., amend. VI. This sixth amendment right to counsel arises the moment when adversarial criminal proceedings are initiated against the defendant. *People v. Young*, 153 Ill. 2d 383, 401-02 (1992). The right to counsel encompasses the right to effective assistance by counsel. *People v. Wilk*, 124 Ill. 2d 93, 107 (1988). Effective assistance by counsel in turn entitles the defendant to counsel who has no conflict of interest, whose loyalty to the defendant is undivided. *Thomas*, 131 Ill. 2d at 111. See also *People v. Stoval*, 40 Ill. 2d 109, 112-13 (1968) ("[A] [defendant's] right to counsel under the Constitution is more than a formality, and to allow him to be represented by an attorney with such conflicting interests as existed here without his knowledgeable consent is little better than allowing him no lawyer at all." (Internal quotation marks omitted.)). It follows that, not only during the trial, but from the very initiation of the criminal proceedings, the defendant has a sixth amendment right to unconflicted counsel.


¶ 71                        2. *The Artificiality of a Dividing Line*
                         *Between the Pretrial Phase and the Trial*

¶ 72    The pretrial phase and the trial do not exist in separate watertight compartments. What

-11-

happens during the pretrial phase affects what happens at trial. For example, the ruling on a motion *in limine* or on a motion for suppression will determine what evidence is presented at trial. More broadly, trial preparation has a profound effect on the trial, and if a conflicting loyalty to the State's witness inhibits the defense counsel in his or her trial preparation, the defense could suffer in the trial. See *People v. Coleman*, 301 Ill. App. 3d 290, 300 (1998). Because the trial depends on the pretrial phase, it would be illogical to hold that only contemporaneous representation during the trial, not during the pretrial phase, qualifies as a *per se* conflict of interest.

¶ 73          3. *The Unlikelihood That the Supreme Court Would Leave*
                    *Such an Important Qualification to Implication*

¶ 74          We are aware of no case in which the supreme court has said, plainly and outright, that the only contemporaneous representation that counts, for purposes of the *per se* conflict rule, is contemporaneous representation during trial. Rather, the supreme court always seems to say, "Where defense counsel has represented a State's witness, a *per se* conflict of interests exists if the professional relationship between the attorney and the witness is contemporaneous with counsel's representation of [the] defendant," or words to that effect–without any qualification. *Thomas*, 131 Ill. 2d at 111. In *Fields*, for example, the supreme court says 10 times (by our count) that an attorney's contemporaneous representation of the defendant and a witness for the State constitutes a *per se* conflict of interest, and not once during those 10 times does the supreme court add the qualifier "contemporaneous representation *during trial*." *Fields*, 2012 IL 112438, ¶¶ 18, 20, 22, 24, 25, 29. It strikes us as unlikely that the supreme court would leave such an important qualification to implication.

¶ 75          4. *An Illustration of Why Contemporaneous Representation*
                    *During the Pretrial Phase Should Be Considered a Per Se Conflict*

¶ 76          Defendant points out:

"[I]t was in Elliot Murphy's best interests that Shawn Stanley be convicted of every felony with which he was charged, in order to maximize the impeachment of his credibility should he testify against Murphy (or, as it turned out, should his video recorded statement be admitted against Murphy as substantive evidence). On the other hand, it was in Shawn Stanley's best interests that he be convicted of the fewest felonies, if any, with which he was charged, in order to minimize his potential punishment."

¶ 77          This dilemma illustrates why defense counsel's contemporaneous representation of the defendant and the State's witness during the pretrial phase of the defendant's case should be considered a *per se* conflict of interest. Why, during defendant's trial, did Baker not impeach Stanley with his prior felony convictions? Not, apparently, because Baker was worried he might shake the jury's confidence in Stanley's testimony that he lacked any memory of telling Hitchens about the beating of Wilson. Surely, People's exhibit No. 29, the video of the interview, already destroyed the believability of Stanley's lack of memory. Even though

it was important, for the defense, that the jury not believe Stanley's video-recorded statement, maybe Baker refrained from impeaching Stanley with his felony convictions because, subliminally, Baker sensed the tension that defendant points out in the paragraph quoted above. Maybe Baker sensed it would be rather crass first to recommend, as Stanley's attorney, that Stanley plead guilty to felony charges and then, as defendant's attorney, turn around and use the felony convictions against Stanley. See *People v. Spreitzer*, 123 Ill. 2d 1, 16 (1988) ("[T]he knowledge that a favorable result for the defendant would inevitably conflict with the interest of his client *** might 'subliminally' affect counsel's performance in ways difficult to detect and demonstrate.").

¶ 78                     F. Defendant's Motion for Summary Reversal and Remand

¶ 79    Defendant has moved for summary reversal and for remand for a new trial because of trial counsel's *per se* conflict of interest in contemporaneously representing defendant and Stanley. For the reasons we have discussed, we grant the motion.

¶ 80    We emphasize, though, that this is an exceptional case and that motions for summary reversal generally are disfavored.

¶ 81                                     III. CONCLUSION

¶ 82    For the foregoing reasons, we reverse the trial court's judgment and remand this case for a new trial.

¶ 83    Reversed and remanded.