# Illinois Official Reports

## Appellate Court

---

### *People v. Schutz*, 2017 IL App (4th) 140956

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RYAN SCHUTZ, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-14-0956 |
| Filed<br>Modified upon denial<br>of rehearing | June 7, 2017<br><br>July 20, 2017 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 13-CF-873; the Hon. John Casey Costigan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and James R. Williams, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Jason C. Chambers, State's Attorney, of Bloomington (Luke McNeill and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel      JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.
Justices Steigmann and Appleton concurred in the judgment and opinion.

## OPINION

¶ 1  In July 2013, defendant, Ryan Schutz, hired attorney M. Jane Foster to represent him in an ongoing criminal case. In November 2013, Foster was hired to represent Kristopher Johnson in two unrelated criminal cases. The following month, Foster withdrew from defendant's case. In February 2014, Johnson, who was still represented by Foster, entered into a plea agreement conditioned upon him testifying against defendant in defendant's pending case. Defendant's attorneys at his bench trial, David Rumley and Michael Herzog, had also previously represented Johnson in unrelated matters. Following the bench trial, the trial court found defendant guilty of multiple charges and subsequently sentenced him to 12 years' imprisonment.

¶ 2  Defendant appeals, asserting all three of his attorneys labored under conflicts of interest that should result in us reversing his convictions and remanding for a new trial. For the following reasons, we affirm.

¶ 3           I. BACKGROUND

¶ 4  In July 2013, the State charged defendant with numerous offenses related to one victim: (1) four counts of criminal sexual assault while holding a position of trust (720 ILCS 5/11-1.20(a)(4) (West 2012)), (2) four counts of criminal sexual assault by force or threat of force (720 ILCS 5/11-1.20(a)(1) (West 2012)), (3) four counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2012)), and (4) two counts of providing alcohol to a minor (235 ILCS 5/6-16(a)(iii) (West 2012)).

¶ 5  Later that month, Foster filed an entry of appearance on defendant's behalf. Foster appeared on defendant's behalf for numerous pretrial matters, including (1) defendant's waiver of his right to a jury trial, (2) two State motions to compel, and (3) the State's motions to allow evidence pursuant to sections 115-7.2 and 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.2, 115-7.3 (West 2012)).

¶ 6  In November 2013, while she continued to represent defendant, Foster entered her appearance on behalf of Kristopher Johnson in two unrelated criminal cases (McLean County case Nos. 13-CF-735 and 13-CF-1332). At some point in November or December 2013, Johnson, who shared a jail cell with defendant, obtained incriminating evidence from defendant regarding defendant's criminal case.

¶ 7  Foster withdrew from defendant's case in December 2013. In February 2014, Johnson entered into a plea agreement wherein he agreed to testify against defendant. Foster signed her acknowledgment of the plea agreement.

¶ 8  In March 2014, defendant's case proceeded to bench trial, where he was represented by Rumley and Herzog. Pursuant to his plea agreement, Johnson testified against defendant, stating he had a conversation with defendant in the McLean County jail wherein defendant

admitted committing sexual acts with the victim. Herzog objected to Johnson's testimony on numerous occasions, citing lack of foundation or narrative testimony.

¶ 9 On direct examination, Johnson admitted he had previously committed drug offenses that resulted in probation and prison sentences. During cross-examination, Rumley and Herzog did not question Johnson about his prior convictions for aggravated battery (McLean County case No. 07-CF-648), violation of bail bond (McLean County case No. 11-CM-752), or felony theft (McLean County case No. 12-CF-177), all impeachable convictions the State disclosed in discovery but failed to raise on direct examination. Herzog cross-examined Johnson regarding the plea agreement, and Johnson admitted he hoped to get a lighter sentence for disclosing confessions from other inmates, particularly those charged with sex offenses. Johnson also admitted he specifically sought information from defendant due to the nature of defendant's case. Herzog also challenged Johnson's version of events, which Rumley highlighted during closing arguments. Rumley argued Johnson's testimony was "laughable," as Johnson "pretended" to know details about the offense, but those details were inconsistent with other evidence. Moreover, Rumley highlighted that Johnson was a "jailhouse snitch" and convicted felon.

¶ 10 In one of the cases involved in Johnson's plea agreement with the State (McLean County case No. 13-CF-735), Herzog had represented Johnson for purposes of conducting a June 2013 bond hearing. The record contains no evidence that defendant or the trial court knew of Herzog's prior representation of Johnson. Additionally, Rumley represented Johnson in a prior criminal proceeding unrelated to Johnson's plea agreement (McLean County case No. 12-CF-177), wherein Johnson was convicted of felony retail theft. Neither the State nor Rumley or Herzog impeached Johnson regarding his conviction on this offense. The record contains no evidence that defendant or the trial court knew of Rumley's prior representation of Johnson.

¶ 11 Following the presentation of evidence, the trial court found defendant guilty of one count of criminal sexual assault, one count of criminal sexual abuse, and two counts of providing alcohol to a minor. In reaching its decision, the court found the victim credible given the general consistency of her statements. The court also noted that several witnesses testified about profound changes in the victim around the time of the alleged offenses, including a diagnosis of posttraumatic stress disorder, that gave further weight to the victim's testimony. As to Johnson's testimony, the court said, "while the court does not place a high degree of reliability in Mr. Johnson, the court would note that there are certain facts that he testified to that would be difficult for him to know had he not had a conversation that he claims he did with the defendant. The court likewise notes Mr. Johnson's background and is considering the totality of his circumstances when evaluating his testimony." The court subsequently sentenced defendant to 12 years' imprisonment.

¶ 12 This appeal followed.

¶ 13 II. ANALYSIS

¶ 14 On appeal, defendant asserts that all three of his attorneys labored under a conflict of interest that should result in us reversing his conviction and remanding the case for a new trial. "[A] criminal defendant is entitled to the undivided loyalty of counsel who is free from conflicting interests or inconsistent obligations." *People v. Murry*, 305 Ill. App. 3d 311, 314, 711 N.E.2d 1230, 1233 (1999). Where the facts in the record are undisputed, the issue of

whether an attorney operated under a conflict of interest is a legal question subject to *de novo* review. *People v. Murphy*, 2013 IL App (4th) 111128, ¶ 24, 990 N.E.2d 815. We begin by addressing whether any of defendant's attorneys labored under a *per se* conflict of interest.

¶ 15                                    A. *Per Se* Conflict of Interest

¶ 16       Defendant asserts Foster and Herzog operated under a *per se* conflict of interest that requires us to reverse and remand this case for a new trial. "A *per se* conflict of interest exists where certain facts about a defense attorney's status, by themselves, engender a disabling conflict." *People v. Fields*, 2012 IL 112438, ¶ 17, 980 N.E.2d 35. An attorney labors under a *per se* conflict of interest where defense counsel's past or present commitments raise the possibility that the attorney is unwilling or unable to effectively represent the defendant. *People v. Becerril*, 307 Ill. App. 3d 518, 524, 718 N.E.2d 1025, 1029 (1999). "Unless a defendant waives his right to conflict-free representation, a *per se* conflict is automatic grounds for reversal." *Fields*, 2012 IL 112438, ¶ 18, 980 N.E.2d 35.

¶ 17       A *per se* conflict of interest occurs: "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved with the prosecution of defendant." *Id.* Here, defendant focuses on the second situation, where defense counsel has a contemporaneous relationship with the defendant and a prosecution witness. "[I]n cases where defense counsel has represented a State's witness, a *per se* conflict of interest will not be held to exist unless the professional relationship between the attorney and the witness is contemporaneous with defense counsel's representation of the defendant." *Id.* ¶ 20. However, a contemporaneous relationship does not require *simultaneous* representation of a defendant and the prosecution's witness. See *People v. Daly*, 341 Ill. App. 3d 372, 377, 792 N.E.2d 446, 450 (2003).

¶ 18                                         1. *Foster*

¶ 19       Defendant argues Foster had a contemporaneous relationship with both defendant and Johnson because she commenced her representation of Johnson in November 2013, prior to withdrawing from defendant's case. In other words, she represented Johnson and defendant simultaneously. However, the State asserts that Johnson did not become a prosecution witness until he signed his plea agreement in February 2014, which occurred after Foster withdrew from defendant's case. The question we must answer is whether a *per se* conflict arises by virtue of Foster representing a prosecution witness *after* withdrawing from defendant's case. Because we find no published cases directly on point, we must attempt to draw analogies from existing case law.

¶ 20       In *People v. Morales*, 209 Ill. 2d 340, 344, 808 N.E.2d 510, 512 (2004), the defendant's attorney also represented Jorge Hernandez, who was disclosed as a potential State's witness in the defendant's case. However, in the end, Hernandez did not testify at the defendant's trial. *Id.* at 343, 808 N.E.2d at 512. Defendant was convicted and, for the first time on appeal, argued that his attorney labored under a conflict of interest due to his contemporaneous representation of a potential prosecution witness. *Id.* at 345, 808 N.E.2d at 512. The supreme court found no *per se* conflict of interest, concluding, because Hernandez never testified, the defendant's attorney was never the attorney for a prosecution witness. *Id.* at 346, 808 N.E.2d at 513.

- 4 -

¶ 21    Other cases have highlighted the witness's status as a prosecution witness in identifying whether an attorney labored under a *per se* conflict of interest. For example, in *Murphy*, 2013 IL App (4th) 111128, ¶ 77, 990 N.E.2d 815, this court found a contemporaneous relationship existed where defense counsel represented a disclosed prosecution witness during the pretrial phase of defendant's case, and the prosecution witness later testified at defendant's trial. Similarly, in *People v. Thomas*, 131 Ill. 2d 104, 113-14, 545 N.E.2d 654, 658 (1989), the supreme court found contemporaneous representation where defense counsel represented a disclosed prosecution witness but failed to call that witness at the defendant's pretrial suppression hearing to challenge the veracity of the witness's statements to police. In all of these cases, the individual's status as a "prosecution witness" was key in determining whether a *per se* conflict of interest existed.

¶ 22    In the present case, at the time Foster represented defendant, Johnson was not disclosed as a prosecution witness, nor does the record suggest anyone was aware Johnson would later become a prosecution witness. In *Morales*, the defendant's attorney did not represent a "prosecution witness" because Hernandez never testified. Applying the same reasoning in the present case, Foster did not represent a "prosecution witness" at the time she represented defendant. This is because February 2014, the earliest time Johnson can be considered a prosecution witness, is after Foster had withdrawn from defendant's case. Thus, we conclude Foster did not contemporaneously represent a prosecution witness such that it would create a *per se* conflict of interest.

¶ 23    In support of his argument that Foster labored under a *per se* conflict of interest, defendant relies, in his reply brief, on *People v. Gerold*, 265 Ill. 448, 107 N.E. 165 (1914). In *Gerold*, the defendant's criminal defense attorney withdrew from representing the defendant and later became the prosecutor in the same case. *Id.* at 453, 107 N.E. at 168. The supreme court, in finding the attorney labored under a conflict of interest, reasoned:

> "[A]n attorney cannot represent conflicting interests or undertake to discharge inconsistent duties. When he has once been retained and received the confidence of a client, he cannot enter the service of those whose interests are adverse to that of his client or take employment in matters so closely related to those of his client or former client as in effect to be a part thereof." *Id.* at 477, 107 N.E. at 177.

The court added, "This rule is a rigid one, designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties. He should undertake no adverse employment, no matter how honest may be his motives and intentions." *Id.* Because of the nature of the attorney-client relationship, an attorney "owes to his client fidelity, secrecy, diligence and skill and cannot take a reward from the other side." *Id.*

¶ 24    In relying on *Gerold*, which provides a generalized overview of conflicts of interest, defendant overlooks the more specific rules relating to *per se* conflicts of interest developed in the years following *Gerold*. Specifically, defendant overlooks the three situations that constitute a *per se* conflict of interest: "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved with the prosecution of defendant." *Fields*, 2012 IL 112438, ¶ 18, 980 N.E.2d 35. The facts before us fit into none of the three proscribed situations. Aside from the fact that Foster did not act as

- 5 -

"defense counsel" during defendant's trial, there are, as noted by the State, other problems with defendant's position.

¶ 25   The State contends this case is more akin to *People v. Probst*, 344 Ill. App. 3d 378, 800 N.E.2d 834 (2003). In *Probst*, the defendant's attorney had previously represented the prosecution witness in an unrelated criminal case. *Id.* at 382, 800 N.E.2d at 839. The witness's unrelated criminal case was dismissed after the witness agreed to act as a police informant. *Id.* Months later, the witness undertook an undercover drug purchase from the defendant, which led to the defendant's arrest and criminal charges. *Id.* This court found no *per se* conflict of interest, concluding defense counsel's prior representation of the witness "neither concerned nor was relevant to defendant's trial." *Id.* at 383, 800 N.E.2d at 840. This was particularly true where nothing in the witness's agreement to become an informant was contingent on a guilty verdict in the defendant's case. *Id.* at 384, 800 N.E.2d at 840.

¶ 26   Similarly, in the present case, nothing in the record indicates Johnson's agreement to testify against defendant was contingent on a guilty verdict in defendant's case. Moreover, Johnson's plea agreement concerned criminal cases wholly unrelated to defendant's criminal case. Thus, as in *Probst*, defense counsel's representation of Johnson "neither concerned nor was relevant to defendant's trial." *Id.* at 383, 800 N.E.2d at 840.

¶ 27   After applying the existing case law to the facts of this case, we conclude Foster did not labor under a *per se* conflict of interest.

¶ 28                                    2. *Herzog*

¶ 29   With respect to Foster, we found no *per se* conflict of interest where she did not contemporaneously represent defendant and a "prosecution witness." See *id*. The same reasoning applies to Herzog. Herzog represented Johnson for purposes of a bond hearing in June 2013, but Johnson did not become a State's witness until February 2014, long after Herzog's representation of Johnson ended. Thus, we conclude Herzog was not laboring under a *per se* conflict of interest.

¶ 30   We now turn to whether any of defendant's attorneys labored under an actual conflict of interest.

¶ 31                        B. Actual Conflict of Interest

¶ 32   Where a defendant fails to demonstrate a *per se* conflict of interest, he must demonstrate that an actual conflict of interest adversely affected his attorney's performance. *People v. Austin M.*, 2012 IL 111194, ¶ 82, 975 N.E.2d 22. To establish a conflict, the defendant must show "some specific defect in his counsel's strategy, tactics, or decision making attributable to [a] conflict." (Internal quotation marks omitted.) *Morales*, 209 Ill. 2d at 349, 808 N.E.2d at 515. "[M]ere speculative or hypothetical conflicts are insufficient to demonstrate an actual conflict of interest." *People v. Bailey*, 374 Ill. App. 3d 1008, 1022, 872 N.E.2d 1018, 1031 (2007).

¶ 33                                    1. *Foster*

¶ 34   Although defendant asserts Foster labored under an actual conflict of interest, he raises no specific argument to support such a finding. Regardless, given that Foster had withdrawn from defendant's case prior to trial and prior to Johnson becoming a prosecution witness, it is

difficult to imagine how a conflict of interest adversely affected Foster's performance. See *Austin M.*, 2012 IL 111194, ¶ 82, 975 N.E.2d 22. Notably, defendant makes no allegation that Foster provided any privileged information about defendant's case to Johnson. In fact, Johnson's agreement to testify stemmed not from his relationship with Foster, but from an alleged conversation between defendant and Johnson. Given Foster did not represent defendant at trial, it cannot be said Foster's divided loyalties impeded her ability to cross-examine Johnson. Accordingly, we conclude defendant has failed to demonstrate Foster labored under an actual conflict of interest.

¶ 35                                        2. *Herzog*

¶ 36        Defendant asserts Herzog's failure to properly impeach Johnson with his prior convictions constituted an actual conflict of interest due to Herzog's duties to Johnson as a former client. Defendant argues Herzog's loyalties were divided between defendant, who stood to benefit from Johnson's impeachment, and Johnson, to whom, as a former client, Herzog had a continuing duty of loyalty.

¶ 37        We begin by noting that Herzog had no reason to engage in redundant impeachment of Johnson regarding his prior criminal history. The State engaged in extensive examination, highlighting that Johnson was currently in jail, had been to prison, was on drug court probation, and had convictions for drug-related offenses. The State's direct examination also included a discussion of Johnson's plea agreement in McLean County case Nos. 13-CF-1332 and 13-CF-735, the latter being the case in which Herzog briefly represented Johnson. On cross-examination, Herzog generally highlighted Johnson's criminal history, including the fact that Johnson (1) had previously been to prison, (2) had been in the McLean County jail for approximately five months, and (3) had prior experiences in criminal court. Although Herzog did not specifically question Johnson about his prior convictions for aggravated battery (McLean County case No. 07-CF-648), violation of bail bond (McLean County case No. 11-CM-752), or felony theft (McLean County case No. 12-CF-177), Herzog's cross-examination of Johnson's criminal history was sufficient to impeach his overall testimony.

¶ 38        Not only did Herzog impeach Johnson's credibility with his history of criminality, Herzog also engaged in extensive cross-examination of Johnson's motives regarding the plea agreement, such as Johnson's (1) knowledge that he could receive favorable treatment from the State if he provided information about an inmate charged with a sex crime, (2) targeting of defendant in an attempt to obtain a statement, and (3) desire to benefit from disclosing defendant's alleged statements. Herzog extensively questioned Johnson regarding the details of defendant's alleged statement, which Rumley used during closing arguments to demonstrate the lack of accuracy in Johnson's testimony when compared to the other evidence. These actions do not demonstrate Herzog was withholding himself from fully questioning Johnson due to ongoing loyalties. Accordingly, defendant has failed to demonstrate an actual conflict of interest adversely affected Herzog's performance.

¶ 39                                        3. *Rumley*

¶ 40        Defendant next asserts Rumley's failure to properly impeach Johnson with his prior convictions constituted an actual conflict of interest due to Rumley's duties to Johnson as a former client. Although Herzog cross-examined Johnson, and was therefore the attorney in a

position to directly challenge Johnson, Rumley challenged Johnson's testimony at length during closing argument. Rumley called Johnson's testimony "laughable" and highlighted the various inaccuracies in Johnson's testimony. As with Herzog, Rumley's actions demonstrated a loyalty to defendant. Accordingly, defendant has failed to show an actual conflict of interest adversely affected Rumley's performance.

¶ 41                                    C. Best Practices

¶ 42       Although we find no specific conflict of interest present in this case, our conclusion does not condone counsels' representations as ideal. As the State conceded at oral argument, this case presents a scenario where "the optics aren't the best." In the judicial system, where we seek to avoid even the appearance of impropriety and extol the notion of fairness, cases such as the one before us tarnish that image. Simply stated, it can be inferred from the facts of this case that Foster worked out a deal for one her clients that was to the detriment of another client. The difficulties presented by this case are avoidable.

¶ 43       Diligent record keeping as to client representation—along with communication among the trial court, counsel, and the defendant—would have prevented the problems that developed in this case. Counsel should stay informed as to prior clients and disclose to the court and the defendant any prior representation of individuals related to the defendant's case. This would allow the defendant to state any grievances or request new counsel prior to trial, and it would give the trial court the opportunity to resolve the matter.

¶ 44       As a better practice, Foster should have informed the trial court that she previously represented defendant and currently represented Johnson, who was now a prosecution witness against defendant. Both Herzog and Rumley should have disclosed their prior representation of Johnson, regardless of the nature or length of the representation. While we do not suspect or intend to suggest any wrongdoing on the part of any of the attorneys involved in this matter, we conclude our proposed solution appropriately places the burden on counsel in light of their ethical obligations in matters before the court. Additionally, in cases involving court-appointed attorneys, such as Herzog and Rumley, the court certainly has the authority to make inquiries aimed at assuring appointed counsel is not laboring under any conflict of interest.

¶ 45                                    III. CONCLUSION

¶ 46       For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we grant the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (West 2014).

¶ 47       Affirmed.