NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (4th) 170803-U

NO. 4-17-0803

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 6, 2019
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| CHARLES SPENCER, | ) | No. 15CF376 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Steigmann and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court reverses and remands, finding defense counsel had an actual conflict of interest.

¶ 2    In December 2015, the State charged defendant, Charles Spencer, with two counts of unlawful delivery of a controlled substance. In May 2017, the trial court found defendant guilty on both counts and sentenced him to seven years' imprisonment.

¶ 3    On appeal, defendant argues (1) his conviction must be reversed because the State failed to prove he committed unlawful delivery of a controlled substance, (2) the State failed to prove the offenses occurred within 1000 feet of a public park, and (3) defense counsel had a *per se* conflict of interest because he previously represented a State's witness or, alternatively, defense counsel had an actual conflict of interest. We reverse and remand.

¶ 4    I. BACKGROUND

¶ 5    In December 2015, the State charged defendant by information with two counts of unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 2014)), alleging defendant knowingly and unlawfully delivered a controlled substance while within 1000 feet of "Play Park" in Pontiac, Illinois, by delivering controlled substances to a confidential police source on November 17, 2015 (count I), and December 2, 2015 (count II).

¶ 6    Prior to his preliminary hearing, the trial court appointed the Livingston County public defender to represent defendant. Defendant pleaded not guilty and subsequently waived his right to a jury trial. Later, defendant hired private counsel, William Bertram, who entered his appearance for defendant on September 23, 2016. Defendant's bench trial commenced in March 2017.

¶ 7    A. Scott Hayes

¶ 8    Scott Hayes, the confidential police source who delivered the controlled substances to the police, testified as one of the State's key witnesses and was previously represented by William Bertram.

¶ 9    On July 17, 2015, prior to the events of this case, the trial court appointed Bertram to represent Hayes in Livingston County case No. 2015-CF-192 for charges of aggravated driving under the influence (DUI) and driving with a revoked license. Bertram continued to represent Hayes throughout the aggravated DUI proceedings and assisted Hayes with the plea agreement entered by the court on February 18, 2016.

¶ 10    While the case against Hayes remained pending, he began acting as a confidential police source in order to initiate controlled buys with defendant. In October 2015, Hayes provided a tip used by the police to obtain a search warrant for a residence in Streator, Illinois, where defendant lived.  Hayes subsequently arranged and participated in controlled drug buys,

which occurred on November 17, 2015, and December 2, 2015, leading to defendant's arrest and conviction. Hayes testified he received no compensation for working with the police or any deal in exchange for his testimony. However, Hayes indicated someone "told [him he] would get a bunch of time if [he] didn't" testify.

¶ 11       During the trial, Hayes acknowledged he was in custody at the time of trial for the aggravated driving DUI charge and had four prior convictions—two for unlawful possession of a weapon in 2005 and two for possessing controlled substances in 2010 and 2012. Hayes also had a 2013 DUI conviction, for which Bertram represented him and neither party addressed at trial. Bertram also did not cross-examine Hayes about Hayes's convictions, or question Hayes about whether Hayes was under the influence of drugs or alcohol when the controlled buys occurred. Additionally, neither Hayes nor Bertram disclosed their attorney-client relationship to the trial court.

¶ 12       Hayes testified he acted as a confidential source by providing the police with information about defendant. He knew defendant sold cocaine because he had purchased cocaine from defendant at least 10 times during the year prior to arranging the controlled drug buys. Each time Hayes bought cocaine from defendant, he called the same telephone number, spoke with defendant, and arranged to pick it up. For the purchases Hayes made prior to the controlled buys, he recognized defendant as the person delivering the cocaine.

¶ 13       During both controlled buys on November 17, 2015, and December 2, 2015, Hayes called defendant and arranged to purchase $140 worth of cocaine on November 15 and $200 worth of cocaine on December 2. The deliveries took place in front of Hayes's house, which was located at 119 Riverview Drive in Pontiac, Illinois. Prior to both controlled buys, the police searched Hayes and, in the evening, dropped him off in front of his house, where he

waited for defendant to arrive. For the November 17 controlled buy, he waited about an hour for defendant to arrive, and the delivery occurred sometime after 6 p.m. On both occasions, after a vehicle pulled up, Hayes approached the vehicle and was observed leaning into the car, paying for the cocaine, and receiving bags containing the drugs. Hayes obtained three bags of cocaine on November 15 and five bags on December 2. In each instance, immediately after the transaction, Hayes delivered the bags to the police.

¶ 14          On cross-examination, Hayes testified that on both occasions, because it was so dark outside and no lights illuminated the vehicles, the only way he could identify defendant as the person in the vehicles was by his long hair. Hayes admitted he would have had trouble distinguishing defendant from someone else in the vehicle with long hair. He knew of two other individuals in the area who looked similar to defendant and once mistakenly thought he saw defendant in public. However, Hayes later stated he had never met nor purchased cocaine from these other individuals.

¶ 15                          B. Inspector Leland Brooke

¶ 16          Leland Brooke, an inspector for the Livingston County Sheriff's Department, testified he worked with Hayes in arranging the controlled buys and observed both the November 17, 2015, and December 2, 2015, buys. Prior to the controlled buys, Inspector Brooke searched Hayes, gave him money to buy the cocaine, and drove Hayes to his residence, which Inspector Brooke stated is located 250 feet from Play Park, a public park in Pontiac, Illinois. Also, before the November 17 controlled buy, Hayes positively identified defendant from a digital image of defendant's driver's license.

¶ 17          During the controlled buy on November 17, Inspector Brooke was parked down the street from Hayes's residence. When a gray Ford Escape appeared in front of Hayes's

residence, Hayes approached the vehicle and stood near it for approximately one minute. After the vehicle left, he gave Inspector Brooke three bags he said were obtained from the vehicle, which Inspector Brooke field-tested and confirmed contained cocaine. Hayes was also certain the person in the vehicle was defendant.

¶ 18 Similarly, during the controlled buy on December 2, Inspector Brooke observed a gray Pontiac appear in front of Hayes's residence. Hayes then approached the vehicle, stood near it for a short time, and, after the transaction, returned to Inspector Brooke with five bags he said he obtained from the vehicle. These bags also tested positive for cocaine. Again, Hayes identified defendant as the person in the vehicle who conducted the transaction.

¶ 19 C. Detective Sergeant Jeff Hamilton

¶ 20 Jeff Hamilton, a detective sergeant for the Livingston County Proactive Drug and Gang Unit (Livingston County Proactive Unit), served as part of the surveillance team for the controlled buys on November 17, 2015, and December 2, 2015. He and Inspector Brian Maier were both in a car positioned approximately a block and a half away from Hayes's residence.

¶ 21 Detective Sergeant Hamilton testified a gray sport utility vehicle (SUV) pulled up in front of the Riverview address on November 17, 2015. Hayes approached the driver's side of the vehicle. Detective Sergeant Hamilton did not see the actual transaction because it was dark out, and he was parked on the opposite side of the SUV, which obstructed his view of Hayes. After the SUV drove away, the surveillance team followed the SUV as it headed toward Streator, Illinois. They also ran the SUV's license plate number and discovered it was registered to Carl Murphy of Streator, Illinois.

¶ 22 D. Inspector Brian Maier

¶ 23    Brian Maier, an officer from the Dwight Police Department assigned to the Livingston County Proactive Unit, also served as part of the surveillance team for the controlled buys on November 17, 2015, and December 2, 2015. Although his testimony about Hayes's conduct during the November 15 drug buy was largely consistent with that of Detective Sergeant Hamilton, and his view was also obstructed by the SUV, Inspector Maier testified Hayes approached the passenger side of the vehicle.

¶ 24                              E. Carl Murphy

¶ 25    Carl Murphy testified he owned a 2004 Ford Escape with a license plate number matching the one observed during the controlled buy on November 17, 2015. At the time of the November 17 buy, Murphy was not driving the vehicle because he was recovering from a foot ulcer. While he was unable to drive, Tonya Murphy, his cousin, possessed the vehicle.

¶ 26    Murphy also stated Tonya lives with her boyfriend, Billy. Both Tonya and Billy have children. Tonya has a daughter named Janessa. Billy has a daughter named Shelby Papenberg. Janessa and Shelby Papenberg are half-sisters and have a close relationship.

¶ 27                              F. Charles Spencer

¶ 28    Defendant testified he lived with Shelby Papenberg in Streator, Illinois, and had a sexual relationship with her. He also acknowledged he had a 2013 felony conviction for unlawful possession of a controlled substance.

¶ 29    Although defendant initially could not recall his exact actions on November 17, he remembered performing at a music show in Markham, Illinois. Before leaving for Markham, he prepared for the performance in Streator, Illinois. He had not been to Pontiac, Illinois, that day and did not sell cocaine to Hayes. A friend, "Amanda," picked him up in Streator around 8 or 9 p.m., and he arrived at the venue around 10 p.m. He required a ride to Markham because he did

not have a valid driver's license or own a vehicle. Defendant's testimony and photographs from the location of the performance, which were admitted as evidence, indicated defendant was in Markham sometime after 10 p.m. on November 17, 2015, and he remained there until the early hours of the morning on November 18, 2015.

¶ 30  Defendant did not remember where he was on December 2, 2015, but testified he had not been in Pontiac and did not sell cocaine to Hayes.

¶ 31  G. Trial Court's Order

¶ 32  On May 16, 2017, the trial court found the State proved defendant guilty beyond a reasonable doubt on both counts of unlawful delivery of a controlled substance within 1000 feet of a public park. In reaching its decision, the court found Hayes's testimony on direct examination, as corroborated by Inspector Brooke, credible. As the court stated:

> "It was defendant's phone number that [Hayes] used to set up the transactions. It was the defendant he spoke to on the phone. The transactions took place just as Hayes and defendant had agreed in terms of location, time, amount and substance. Hayes had prior dealings with defendant *** And, immediately after the transaction, Hayes told Inspector Brooke that it was defendant who sold him the drugs."

¶ 33  The trial court found Hayes's contradictory statements made during cross-examination lacked credibility. The court specifically noted Hayes's demeanor changed from disinterested and terse responses on direct examination to being talkative and cooperative on cross-examination. The court noted how Hayes seemed to realize the significance of his identification testimony when, during cross-examination, he "realized that it was dark outside, no

lights were on in the vehicle and he knew" of other people with a similar look to the defendant. According to the court, "Hayes' back pedaling during cross-examination was simply not credible," and the court found "Hayes tried to waffle on his identification of the defendant as the individual he purchased cocaine from."

¶ 34    The trial court also found defendant lacked credibility because his testimony was "inconsistent," "self-serving," and "embellished." The court particularly noted defendant had no evidence to corroborate his testimony and found it "entirely possible" for defendant to have conducted the drug buy "in Pontiac, return to Streator and get to Markham" around 10 p.m.

¶ 35    However, the order also contained some factual inaccuracies. Notably, the order stated the controlled drug buys occurred in front of defendant's residence, rather than Hayes's residence, and incorrectly relied on what the court thought was defendant's Chicago-area telephone number.

¶ 36    Defense counsel filed a motion to reconsider the sentence, and the trial court denied the motion.  This appeal followed.

¶ 37                                        II. ANALYSIS

¶ 38                                    A. Conflict of Interest

¶ 39    "The right to effective assistance of counsel under the sixth amendment to the Constitution of the United States entitles a criminal defendant to the undivided loyalty of counsel, free from conflicting interests or inconsistent obligations." *People v. Enoch*, 146 Ill. 2d 44, 51-52, 585 N.E.2d 115, 119 (1991). "A criminal defendant's sixth amendment right to the effective assistance of counsel includes the right to conflict-free representation."  *People v. Peterson*, 2017 IL 120331, ¶ 102, 106 N.E.3d 944, *modified on denial of reh'g* (Jan. 19, 2018).

"Two categories of conflict of interest exist: *per se* and actual." *Peterson*, 2017 IL 120331, ¶ 102.

¶ 40                                    1. Per Se *Conflict of Interest*

¶ 41          Defendant argues his defense counsel had a *per se* conflict of interest because counsel previously represented the State's confidential source. We disagree.

¶ 42          "Where the facts in the record [concerning an attorney's representation] are undisputed, the issue of whether an attorney operated under a conflict of interest is a legal question subject to *de novo* review." *People v. Schutz*, 2017 IL App (4th) 140956, ¶ 14, 79 N.E.3d 849, *modified on denial of reh'g* (July 20, 2017). The fact Bertram represented defendant and Hayes is undisputed. Thus, our review of the trial court's decision is *de novo*.

¶ 43          A *per se* conflict of interest occurs "(1) where defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) where defense counsel contemporaneously represents a prosecution witness; and (3) where defense counsel was a former prosecutor who had been personally involved with the prosecution of defendant." *People v. Fields*, 2012 IL 112438, ¶ 18, 980 N.E.2d 35. "Where defense counsel has represented a State's witness, a *per se* conflict of interests exists if the professional relationship between the attorney and the witness is contemporaneous with counsel's representation of defendant." *People v. Thomas*, 131 Ill. 2d 104, 111, 545 N.E.2d 654, 657 (1989).  Representation is contemporaneous when defense counsel represents the defendant and a State's witness during the pretrial and trial portions of the defendant's case. *People v. Murphy*, 2013 IL App (4th) 111128, ¶¶ 70-79, 990 N.E.2d 815.

¶ 44          However, representation is not contemporaneous when it occurs "prior to counsel's representation of defendant." *Fields*, 2012 IL 112438, ¶ 29. Further, the mere existence

of an "ongoing attorney-client privilege does not create a *per se* conflict of interest." *Murphy*, 2013 IL App (4th) 111128, ¶ 46 (citing *Fields*, 2012 IL 112438, ¶ 29). Thus, using a "realistic appraisal of defense counsel's professional relationship to the witness under the circumstances of the case," courts should first consider whether defense counsel had a contemporaneous relationship with the witness. *People v. Probst*, 344 Ill. App. 3d 378, 383, 800 N.E.2d 834, 840 (2003); *Fields*, 2012 IL 112438, ¶ 29. Only after a court finds a contemporaneous relationship exists should it then consider whether such a relationship had significant relevance to the defendant's trial or "would benefit from an unfavorable verdict for the defendant." *Fields*, 2012 IL 112438, ¶ 17; *People v. Spreitzer*, 123 Ill. 2d 1, 16, 525 N.E.2d 30, 35 (1988); *Probst*, 344 Ill. App. 3d at 383.

¶ 45        For example, in *Murphy*, a *per se* conflict of interest existed where the defense counsel's representation of the State's witness began during the pretrial stage of the defendant's case on an unrelated matter and continued to overlap throughout the defendant's trial. *Murphy*, 2013 IL App (4th) 111128, ¶¶ 14-21. During the trial, the defense counsel cross-examined the State's witness and "[brought] out [some of] the inconsistencies" in the witness's testimony but did not "impeach [the witness] with his prior felony conviction[s]." *Murphy*, 2013 IL App (4th) 111128, ¶¶ 9, 77. As this court noted, it was important to challenge the witness's credibility to the jury. *Murphy*, 2013 IL App (4th) 111128, ¶ 77. A problem arises if the defense counsel may have "refrained from impeaching" the witness because his contemporaneous representation created a situation where he would have been required to use his ongoing knowledge and recommendations regarding the witness's unrelated criminal charge against the witness in court. *Murphy*, 2013 IL App (4th) 111128, ¶¶ 76-77.

¶ 46        However, in *People v. Free*, 112 Ill. 2d 154, 492 N.E.2d 1269 (1986), no *per se* conflict of interest existed where the defense counsel represented the defendant in connection with postconviction relief and previously represented the witness who testified against the defendant at a motion to suppress hearing. *Free*, 112 Ill.2d at 166. At the time of the motion to suppress hearing, the defense counsel did not represent the defendant. *Free*, 112 Ill. 2d at 166. Although the record did not establish when the defense counsel's representation of the witness ceased, the supreme court found no overlap and determined the defense counsel's representation of the witness was not contemporaneous with his representation of the defendant. *Free*, 112 Ill. 2d at 168.

¶ 47        Similarly, in *Probst*, this court did not find a *per se* conflict of interest when defense counsel's representation of the witness occurred 15 months before the defendant's case began and involved no subsequent period of overlap with the defendant's case. *Probst*, 344 Ill. App. 3d at 383-84. Although the witness's unrelated criminal case was dismissed because the witness began working as a police informant and his work directly led to the defendant's criminal charges, the defense counsel's prior representation "neither concerned nor was relevant to defendant's trial." *Probst*, 344 Ill. App. 3d at 383.

¶ 48        Here, as in *Free* and *Probst*, Bertram's representation of Hayes and defendant was not contemporaneous. Bertram began representing Hayes for the unrelated DUI charges in July 2015. Beginning in October 2015, Hayes began working as a confidential source and identified defendant as his source for cocaine, resulting in a search warrant being executed at the residence where defendant was staying with several other people. Between November and December, Hayes set up several controlled buys from the defendant, two of which were charged in this case. During this time, Bertram continued to represent him. Based on the work Hayes did for the

police, defendant was arrested in December 2015 and, at that point, was represented by the office of the public defender. After indicating a desire to hire private counsel on two occasions, defendant eventually said in July 2016 he was not privately represented. Then in December 2016, he appeared with Bertram as his attorney. In February 2016, Hayes pleaded guilty to the aggravated DUI charges. Although Bertram did not formally withdraw from Hayes's case, the record for Livingston County case No. 2015-CF-192 does not show Bertram had any subsequent involvement with the case or appearances for Hayes. Since his representation of defendant did not begin until December 2016, this indicates Bertram's representation of Hayes and defendant did not overlap. Thus, Bertram did not contemporaneously represent Hayes and defendant, although he was clearly representing Hayes while he was working as a confidential source, providing information and setting up controlled buys involving the defendant.

¶ 49        Relying on *People v. Daly*, 341 Ill. App. 3d 372, 792 N.E.2d 446 (2003), defendant argues a *per se* conflict of interest exists because Bertram was bound by attorney-client privilege and had to cross-examine Hayes during trial. We disagree.

¶ 50        In *Daly*, the defense counsel previously represented the state's key witness, a paid informant who also participated in controlled drug buys with the defendant, and, approximately 11 months later, began representing the defendant. *Daly*, 341 Ill. App. 3d at 373-74. During the time the defense counsel represented the witness, the witness had agreed to participate in drug buys in exchange for the dismissal of criminal charges against him. *Daly*, 341 Ill. App. 3d at 373-75. The defense counsel also knew the witness was separately paid for successfully completing some drug buys. *Daly*, 341 Ill. App. 3d at 375. Despite these circumstances, the defense counsel failed to introduce evidence about the witness's deal with law enforcement or impeach the witness about his arrangements with law enforcement. *Daly*, 341 Ill. App. 3d at 375.

In finding a *per se* conflict, this court focused on the ongoing professional responsibility the defense counsel owed to the witness and equated this professional relationship with a contemporaneous relationship in any instance where a defense counsel's representation concerned "a matter of significant relevance to defendant's trial" and there was a strong potential for a violation of the attorney-client privilege. *Daly*, 341 Ill. App. 3d at 377-78. Thus, even though the defense counsel had not represented the witness for nearly a year, the defense counsel's inability to cross-examine the witness about his prior representation demonstrated the existence of a *per se* conflict of interest. *Daly*, 341 Ill. App. 3d at 377-78.

¶ 51        However, our reasoning for finding a contemporaneous relationship in *Daly* did not survive *Fields*. See *Murphy*, 2013 IL App (4th) 111128, ¶ 46. "In *Fields*, the supreme court rejected the notion that the defense counsel's prior representation of the State's witness created a *per se* conflict of interest." *Murphy*, 2013 IL App (4th) 111128, ¶ 46. Thus, after *Fields*, when there is no period of overlap with a defense counsel's prior representation of a witness and present representation of the defendant, the defense counsel's ongoing duty to maintain attorney-client privilege can no longer serve as the basis for a *per se* conflict of interest. See *Murphy*, 2013 IL App (4th) 111128, ¶ 46.

¶ 52        Accordingly, the circumstances of this case do not suggest Bertram's professional relationship with Hayes resulted in a *per se* conflict. Since Bertram represented Hayes in Case No. 2015-CF-192, Bertram certainly had a professional relationship with Hayes, and Bertram's ongoing duties to Hayes would have prevented him from cross-examining Hayes on related matters. However, as the supreme court stated, for a *per se* conflict to exist, Bertram's professional relationship with Hayes must also be contemporaneous. See *Fields*, 2012 IL 112438, ¶ 29; *Thomas*, 131 Ill. 2d at 111. The mere fact Bertram retained a professional

relationship with Hayes due to Bertram's duties to his former client is insufficient to create a contemporaneous relationship. Further, as we will explain below, the state of the record is such that we are unable to conclude whether Bertram was directly involved in negotiating any arrangement for Hayes, resulting in his cooperation with the police. Although fatal to any claim of a *per se* conflict, this issue will become relevant later.

¶ 53        Thus, because defense counsel's professional relationship with Hayes was not contemporaneous with his representation of defendant, a *per se* conflict of interest did not exist in this case.

¶ 54                                    2. *Actual Conflict of Interest*

¶ 55        Defendant alternatively argues his sentence should be reversed because, by previously representing the State's confidential source, defense counsel labored under an actual conflict of interest. We agree.

¶ 56        "Where a *per se* conflict of interest is not established, it is the defendant's burden to show an actual conflict of interest and to demonstrate prejudice." *People v. Flores*, 128 Ill. 2d 66, 84, 538 N.E.2d 481, 487 (1989). Although the defendant need not prove such prejudice "contributed to the conviction," the defendant must "establish that an actual conflict of interest adversely affected the lawyer's performance." *People v. Austin M.*, 2012 IL 111194, ¶ 82, 975 N.E.2d 22. This requires the defendant to show "some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict." *Spreitzer*, 123 Ill. 2d at 18. "Where a claim of conflict of interest is based on the prior representation of a prosecution witness by defense counsel, the court should examine the possibility that privileged information acquired from the witness might not have been used to impeach the witness though it would have been relevant in cross-examination." *Flores*, 128 Ill. 2d at 84-85. However, " '[m]ere speculative or

hypothetical conflicts are insufficient to demonstrate an actual conflict of interest.' " *Schutz*, 2017 IL App (4th) 140956, ¶ 32 (quoting *People v. Bailey*, 374 Ill. App. 3d 1008, 1022, 872 N.E.2d 1018, 1031 (2007)).

¶ 57        Defendant cites to three specific instances where defense counsel's performance was affected by an actual conflict of interest: (1) failing to impeach Hayes with Hayes's 2013 DUI conviction, (2) failing to question Hayes about whether he had an agreement with the State or on his testimony he would "get a bunch of time" for failing to testify, and (3) failing to question Hayes about whether he had been under the influence of drugs or alcohol during the controlled buys.

¶ 58        As for defendant's first allegation, defense counsel did not fail to impeach Hayes with the 2013 DUI conviction because the conviction was inadmissible for the purposes of impeachment. Evidence of a witness's criminal history may only be used for the purpose of impeachment if the crime is "(1) *** punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or (2) involved dishonesty or false statement regardless of the punishment ***." Ill. R. Evid. 609 (a) (eff. Jan. 6, 2015).

¶ 59        Hayes's 2013 DUI conviction fails to meet either category. Although the record here does not indicate the nature of Hayes's 2013 conviction, we take judicial notice of public records showing Hayes's conviction for the 2013 DUI was a Class A misdemeanor. See *People v. Jimerson*, 404 Ill. App. 3d 621, 634, 936 N.E.2d 749, 761 (2010) ("[A] reviewing court may take judicial notice of public records and other judicial proceedings."). Under Illinois law, a person's first or second DUI conviction is punished as a Class A misdemeanor. 625 ILCS 5/11-501(c)(1) (West 2012). The maximum period of imprisonment for a Class A misdemeanor is less than one year. 730 ILCS 5/5-4.5-55(a) (West 2012). Since Hayes's 2013 DUI conviction was a

Class A misdemeanor, which could not be punished with imprisonment exceeding one year, the evidence was inadmissible under the first category for the purpose of impeaching Hayes.

¶ 60    Similarly, a DUI conviction does not inherently involve dishonesty or false statements. "The terms 'dishonesty' and 'false statement' refer to crimes such as perjury, subornation of perjury, false statement, criminal fraud, embezzlement, false pretenses, other offenses in the nature of *crimen falsi*, and theft. [Citation.]." *People v. Atkinson*, 186 Ill. 2d 450, 465, 713 N.E.2d 532, 539 (1999) (Rathje, J., dissenting). Offenses in the nature of "*[c]rimen falsi* [do] not include all offenses which involve a charge of untruthfulness, but only those which injuriously affect the administration of public justice ***." *People v. Spates*, 77 Ill. 2d 193, 201, 395 N.E.2d 563, 567 (1979). "[A]ny misdemeanor 'which has as its basis lying, cheating, deceiving[,] or stealing [ ] bears a reasonable relation to testimonial deceit and should be admissible for impeachment purposes.' [Citation]." *Reichert v. Board of Fire & Police Commissioners of City of Collinsville*, 388 Ill. App. 3d 834, 848, 905 N.E.2d 861, 873 (2009).

¶ 61    A DUI is a crime resulting from driving or controlling a vehicle with a blood alcohol concentration at or exceeding 0.08 units or being under the influence of "any intoxicating compound *** to a degree that renders the person incapable of driving safely." 625 ILCS 5/11-501(a)(3) (West 2012). It does not inherently involve the accused lying, cheating, deceiving, or stealing. Accordingly, Hayes's 2013 DUI conviction is not a crime involving dishonesty or a false statement, and thus was inadmissible for the purpose of impeaching Hayes.

¶ 62    When evidence is inadmissible for the purpose of impeachment under the rules of evidence, defense counsel's failure to impeach a witness with that evidence can hardly be said to result from a conflict of interest. Further, even if it had been possible to impeach Hayes with the conviction, the failure to include one more conviction, when he already acknowledged four prior

convictions under direct testimony, could reasonably be viewed as redundant, unnecessary, or overly prejudicial and not demonstrative of a conflict of interest. See *Schutz*, 2017 IL App (4th) 140956, ¶¶ 37-38 (finding no conflict of interest where defense counsel previously represented the State's witness in an unrelated matter and engaged the witness in extensive cross-examination about the witness's motives and testimony, but failed to impeach the witness with some of the witness's prior convictions).

¶ 63        However, defense counsel's failure to question Hayes about his statement indicating he would "get a bunch of time" and whether he was under the influence of alcohol or drugs is more troubling and reflects an actual conflict of interest.

¶ 64        As noted above, in *Murphy*, the defense counsel operated under a conflict of interest that prevented the defendant from receiving the effective assistance of counsel. *Murphy*, 2013 IL App (4th) 111128, ¶¶ 1, 76-77. This court viewed the defense counsel's failure to impeach the State's witness, whom the defense counsel represented in an unrelated matter, as a dilemma where the witness's interests were directly at odds with the defendant's interests. *Murphy*, 2013 IL App (4th) 111128, ¶¶ 76-77. Although this analysis applied to a situation involving the contemporaneous representation of both individuals, similar reasoning can apply in circumstances failing to meet the threshold for contemporaneous representation (*e.g.*, when the period of the defense counsel's representation of the witness does not overlap with the period of representation of the defendant). Thus, where a defense counsel has represented a State's witness, an actual conflict of interest may exist in the absence of a contemporaneous professional relationship when ongoing loyalties prevented the defense counsel from fully questioning or impeaching the witness. See *Flores*, 128 Ill. 2d at 85; *Schutz*, 2017 IL App (4th) 140956, ¶¶ 16-17; *Murphy*, 2013 IL App (4th) 111128, ¶¶ 76-77.

¶ 65    Here, as was true in *Murphy*, it was important for defense counsel to challenge Hayes's credibility. Hayes acted as the State's primary witness and the case largely rested on whether his testimony or defendant's testimony was more credible. However, despite this importance, defense counsel failed to pursue two areas of impeachment.

¶ 66    First, in response to a question from the prosecutor asking whether Hayes testified in exchange for a deal with the State, Hayes said, "No. Told me I'd get a bunch of time." When asked to repeat his answer, Hayes said, "Told me I'd get a bunch of time if I didn't." The State then followed up with several questions intended to clarify that, in fact, he did not "receive any sort of deal" and was not "promised anything in exchange for [his] testimony." Since the State was obviously interested in establishing it had done or said nothing to convey any sort of agreement or effort to coerce Hayes, the most glaring omission from its questions was the obvious follow up to "Told me I'd get a bunch of time"; namely: "Who told you?" Either the State did not want the response before the court or was surprised by the comment and, being unsure of the answer, did not ask the question. This was the last topic addressed by the State on direct examination.

¶ 67    The only thing more puzzling than the State's apparent decision to refrain from asking the obvious follow-up question to "Told me I'd get a bunch of time" is defense counsel's failure to do so. At no time during cross-examination did Bertram ask Hayes who told him he would "get a bunch of time." If the State's reluctance was because it was aware Hayes had been threatened by either the State or police with "a bunch of time" if he did not cooperate, that was clearly the point defendant would want to make—that Hayes had an obvious bias or motive to lie based upon the threats by the State.

¶ 68     As we have previously recognized, a defense counsel's prior representation of a witness can affect defense counsel's "performance in ways difficult to detect and demonstrate" from the record. *Daly*, 341 Ill. App. 3d at 378. However, as defendant suggests, Bertram's failure to question Hayes on this issue or to elicit Hayes's motivations for testifying leaves us with the palpable conclusion Bertram acted under an ongoing loyalty to Hayes.

¶ 69     Bertram represented Hayes during the entire time he was working as an informant in the case and developing evidence against defendant. Bertram was involved in a plea agreement on behalf of Hayes entered in February 2016. He was also aware Hayes had been re-arrested for violating his bond for alcohol consumption while on bond for a probation violation prior to the December controlled buy. As his attorney, it is not unreasonable to surmise Bertram would have attempted to negotiate a resolution of Hayes's case, nor is it unreasonable the State would have expected his continued cooperation. If the statement to Hayes about getting "a bunch of time" had come from the State, as we noted, Bertram would have wanted that brought to the attention of the trial court as a further effort to discredit his testimony. He clearly was attempting to do so. He spent a great deal of time attacking Hayes's identification testimony and his ability to identify defendant in general. If, however, the statement had come from Bertram, as Hayes's counsel, in an effort to convince Hayes his continued cooperation was in his own best interests, Bertram's attorney-client relationship would have prevented him from asking such an otherwise obvious question. See *Daly*, 341 Ill. App. 3d at 377 (noting the defense counsel "could not properly cross-examine [the witness] about any" matters connected with the defense counsel's prior representation); Ill. R. Prof'l Conduct R. 1.7(a)(2) (eff. Jan. 1, 2010) ("A concurrent conflict of interest exists if: *** there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, [or] a former

client ***."); Ill. R. Prof'l Conduct R. 1.8(b) (eff. Jan 1, 2010) ("A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent ***.").

¶ 70          When "[t]he State also has an interest in preventing defense counsel from cross-examining a critical State witness on matters that were the subject of a prior attorney-client relationship[,] [t]he situation is 'too fraught with the dangers of prejudice, prejudice which the cold record might not indicate ***.' [Citation.]" *Daly*, 341 Ill. App. 3d at 378. Such was the situation here. Aside from incompetence of counsel, for which there is no other evidence in this record, there is no other reasonable explanation for failing to ask, "Who told you?" This would also explain why the State did not ask the question, since it knew it would open up the entire issue of conflict someone should have brought to the trial court's attention at the outset of Bertram's representation. The fact Hayes's counsel did not do so himself is equally troubling. Knowing your former client was the person responsible for setting up the controlled purchases for which your current client is now on trial, purchases which were orchestrated while you were counsel for the former client, would seem to be the sort of thing you might want to bring to the court's attention.

¶ 71          Contrary to the State's argument, the adverse effect of Bertram's performance is more than speculative. Hayes's reasons for testifying and the existence of any biases were directly in the scope of cross-examination and significantly relevant to defendant's case. See *Probst*, 344 Ill. App. 3d at 384 (noting there was no conflict of interest when the matters the defense counsel had represented the witness for were not within the scope of cross-examination in the defendant's case); see also *Daly*, 341 Ill. App. 3d at 377, (conflict of interest where the defense counsel's representation of the witness was significantly relevant to the defendant's

trial). Although defendant concedes Bertram rigorously cross-examined Hayes about his identification of defendant, this line of questioning consisted of nothing more than bringing out inconsistencies made during his prior testimony. However, as in *Murphy*, defense counsel needed to do more for defendant than bring out the inconsistencies in Hayes's testimony—he needed to try to discredit Hayes. Since the trial court stated Hayes "tried to waffle" on his identification of defendant and his "back pedaling" during cross-examination lacked credibility, addressing Hayes's mere inconsistencies was insufficient. It is more than speculation to find Bertram had a conflict of interest preventing him from questioning Hayes further. Thus, Bertram's loyalty to Hayes had an adverse effect on his performance.

¶ 72    Bertram also failed to question Hayes about his drug and alcohol use when the controlled drug buys occurred. Hayes had testified he had not consumed any drugs or alcohol, or had them in his system, during the controlled drug buys because he was on an ankle bracelet. However, on December 9, 2015, just one week after the second controlled drug buy occurred, the police arrested Hayes for drinking alcohol in violation of the terms of his bond in Case No. 2015-CF-192. Contrary to what Hayes's testimony implies, the ankle bracelet was no serious impediment to consuming alcohol, a fact Bertram knew because he still represented Hayes when the police arrested Hayes.

¶ 73    We disagree with the State's contention Hayes's subsequent consumption of alcohol had no impact his credibility. As is generally well known, alcohol and drug consumption can directly impact a person's perception, judgments, and memory and can be used for impeachment. See *People v. Kegley*, 227 Ill. App. 3d 48, 55, 590 N.E.2d 922, 929 (1992) (noting a witness's drug use may be used for impeachment purposes to question the witness's lack of ability to " 'observe, [or] accurately reflect and retain what was observed' [citation]"); *People v.*

*Stalions*, 139 Ill. App. 3d 1033, 1038, 488 N.E.2d 297, 302 (1986) ("[P]roof of alcoholism as affecting credibility has been implicitly approved."); 8 A.L.R.3d 749 (1966) ("Independent testimony that a witness in a criminal prosecution, other than the accused, was drinking subsequently to the occurrence about which he testified, has been considered admissible, as bearing upon the question of his possible intoxication at the time of the matter he testified to, to affect the credibility of his testimony.").

¶ 74        If Hayes had been under the effects of drugs or alcohol during either transaction, the weight of his identification of defendant to inspector Brooke after each controlled drug buy would certainly have been more questionable, directly impacting Hayes's credibility. Again, as defendant argues, Bertram's failure to question Hayes about his drug and alcohol use indicates Bertram acted under ongoing loyalty to Hayes.

¶ 75        Further, contrary to the State's assertions, the absence of information in the record about whether Hayes was under the influence of drugs or alcohol during the drug buys does not mean Bertram had no conflict of interest. The record does not suggest Hayes was under the influence of drugs or alcohol during the transactions because Bertram did not question Hayes about his drug or alcohol use. The lack of such information in the record does not absolve Bertram from having an actual conflict. Instead, it helps highlight how an actual conflict of interest adversely affected Bertram's performance because Bertram was put in a position of addressing his prior representation and knowledge of Hayes but chose not to do so.

¶ 76        Together, these failures to question and impeach Hayes reflect Bertram had an actual conflict of interest, which adversely affected his performance. Had Bertram questioned Hayes about his motivations for testifying or whether Hayes was under the influence of drugs or alcohol during the controlled buys, the trial court may have assessed Hayes's credibility

- 22 -

differently. Thus, defendant has shown an actual conflict of interest adversely affected defense counsel's performance. Therefore, we reverse the trial court's judgment and remand for a new trial.

¶ 77                                B. Sufficiency of the Evidence

¶ 78        Defendant argues the State failed to prove him guilty beyond a reasonable doubt of committing unlawful delivery within 1000 feet of a public park because the evidence did not establish defendant's identity or prove the drug buys occurred within 1000 feet of a public park. As we have decided this matter on other grounds, we need not address this issue.

¶ 79                                III. CONCLUSION

¶ 80        For the reasons stated, we reverse the trial court's judgment and remand this case for a new trial.

¶ 81        Reversed and remanded.