2020 IL App (2d) 180830-U
Nos. 2-18-0830 & 2-19-0109, cons.
Order filed September 30, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 17-CF-1708 |
| | ) | |
| LARRY EDWARD DUNGEY, | ) | Honorable |
| | ) | Liam C. Brennan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*:  In appeal No. 2-18-0830, the trial court properly found that it lacked jurisdiction to consider the defendant's untimely filed motions to withdraw his guilty plea and challenge his sentence; in appeal No. 2-19-0109, the trial court did not err in dismissing the defendant's postconviction petition as frivolous and patently without merit.

¶ 2   Following a fully negotiated plea agreement, the defendant, Larry Dungey, was convicted of aggravated driving under the influence (DUI) (625 ILCS 5/11-501(a) (West 2016)) and driving while license revoked (DWLR) (625 ILCS 5/6-303(a) (West 2016)) and was sentenced to six and a half years' imprisonment.  In this consolidated appeal, the defendant appeals from the orders of the circuit court of Du Page County (1) denying his motion to withdraw his guilty plea and

challenge his sentence and (2) dismissing his postconviction petition as frivolous and patently without merit. We affirm.

¶ 3                                I. BACKGROUND

¶ 4      On September 7, 2017, the defendant was charged by indictment with aggravated DUI (625 ILCS 5/11-501(a) (West 2016)) and DWLR (625 ILCS 5/6-303(a) (West 2016)). The charges alleged that, on August 21, 2017, the defendant drove under the influence of alcohol when he had five prior DUI violations and four or more prior DWLR violations.

¶ 5      On June 21, 2018, the defendant entered a fully negotiated guilty plea to the two charges in the indictment and agreed to a sentence of six and a half years' imprisonment. The trial court advised the defendant that he could plead not guilty and that he was giving up certain rights by entering the negotiated plea. The defendant acknowledged that he had not been promised anything beyond the plea agreement and that he had not been threatened to enter the plea.

¶ 6      The State provided a factual basis for the plea, to which the defendant stipulated. On August 21, 2017, an Addison police officer came upon a car that had struck the "Welcome to Addison" sign and had gone into a ditch. The defendant was present and identified himself as the driver. Believing the defendant was under the influence of alcohol, the officer asked the defendant to perform field sobriety tests. The defendant attempted the heel-to-toe test, but then stopped and refused to perform anything further. Pursuant to a search warrant, the defendant's blood was drawn, which showed a blood alcohol reading in excess of .08. A driving abstract would show that the defendant's license was revoked due to a prior DUI conviction and that he had three prior DUI violations and four prior DWLR violations. After hearing the factual basis for the plea and confirming that the defendant wished to plead guilty, the trial court accepted the plea.

¶ 7    On July 30, 2018, the defendant filed a letter with the trial court seeking to withdraw his guilty plea. On August 3, 2018, the defendant filed a motion to reconsider sentence and a request for discovery. On August 17, 2018, the trial court found that the defendant's filings of July 30 and August 3 were untimely and therefore denied them for lack of jurisdiction.

¶ 8    On September 28, 2018, the defendant filed another letter seeking to withdraw his guilty plea and to challenge his sentence. On October 9, 2018, the trial court denied the defendant's requests in the September 28th letter on jurisdictional grounds. The trial court also appointed the Office of the State Appellate Defender to represent the defendant with respect to that denial. On October 11, 2018, the defendant filed a notice of appeal from the trial court's October 9 order. That appeal was docketed in this court as appeal No. 2-18-0830.

¶ 9    On November 2, 2018, the defendant filed a petition pursuant to the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1(a) (West 2016)). The petition alleged, among other things, that: (1) the defendant had been unable to challenge any rulings in violation of his constitutional rights and (2) his attorney believed he was "100% guilty" and had told him that he would have to come up with $10,000 to go to trial if he did not take the plea deal.

¶ 10    On February 8, 2019, the trial court dismissed the defendant's postconviction petition as frivolous and patently without merit. The trial court explained that the plea admonitions belied any claim of involuntariness of the plea or lack of knowledge of the consequences of the plea. Further, the trial court found that the defendant had not explained how the "barebones contention" that his attorney did not believe in the defendant's innocence and wanted $10,000 to take the case to trial had prejudiced him or rendered the plea involuntary. Following the trial court's ruling, the defendant filed a notice of appeal. That appeal was docketed in this court as appeal No. 2-19-0109.

¶ 11    On December 30, 2019, this court consolidated the defendant's two appeals for review.

¶ 12                                    II. ANALYSIS

¶ 13                               A. Appeal No. 2-18-0830

¶ 14    In appeal No. 2-18-0830, the defendant appeals from the trial court's October 9, 2018, order finding that his motions to withdraw his guilty plea and to challenge his sentence were untimely filed.  The defendant now acknowledges that the trial court's decision was correct.

¶ 15    Under Supreme Court Rule 604(d) (Ill. S. Ct. R. 604(d) (eff. July 1, 2017)), before a defendant may appeal from a judgment on a plea of guilty, he must file a written motion to reconsider the sentence or withdraw the plea in the circuit court within 30 days of the date on which sentence is imposed.  *People v. Flowers*, 208 Ill. 2d 291, 300 (2003).  Absent an extension of time granted by the trial court prior to the expiration of the 30-day deadline, that motion must be filed within the 30-day period specified by the rule.  *Id.* at 300.  The filing of a Rule 604(d) motion is a condition precedent to an appeal of a plea of guilty.  *Id.* at 300-01.  As the defendant filed his motion to withdraw his guilty plea beyond the 30-day time limit contained in Rule 604(d), we are precluded from considering the defendant's appeal of his conviction on its merits.  *Id.* at 301; *People v. Price*, 364 Ill. App. 3d 543, 545-46 (2006).

¶ 16                               B. Appeal No. 2-19-0109

¶ 17    In appeal No. 2-19-0109, the defendant appeals from the denial of his postconviction petition.  The defendant argues that the trial court erred in dismissing his petition because he raised two non-frivolous claims: (1) he lost his right to a direct appeal because his timely motions challenging his plea and sentence were lost in the jail mail system; and (2) his attorney coerced him into pleading guilty by telling him that he would have to come up with $10,000 to go to trial if he did not take the plea agreement.

¶ 18    The Act provides a tool by which those under criminal sentence in this state can assert that their convictions or sentences were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both.  725 ILCS 5/122-1(a) (West 2018).  "A proceeding brought under the Act is not an appeal of a defendant's underlying judgment.  Rather, it is a collateral attack on the judgment."  *People v. Evans*, 186 Ill. 2d 83, 89 (1999).  The purpose of a postconviction proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal.  *People v. Barrow*, 195 Ill. 2d 506, 519 (2001).  The standard of review for the dismissal of a postconviction petition is *de novo*.  *People v. Coleman*, 183 Ill. 2d 366, 389 (1998).

¶ 19    At the first stage of a postconviction proceeding, the trial court must independently review the petition within 90 days of its filing and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018).  A petition is frivolous or patently without merit only if it has no arguable basis in law or fact.  *People v. Hodges*, 234 Ill. 2d 1, 16 (2009).  A petition lacks an arguable basis in law or fact if it is "based on an indisputably meritless legal theory," such as one that is "completely contradicted by the record," or "a fanciful factual allegation," including "those which are fantastic or delusional."  *Id.* at 16-17.  If the court determines that the petition is either frivolous or patently without merit, the court must dismiss the petition in a written order.  725 ILCS 5/122–2.1(a)(2) (West 2018).  At the first stage, the trial court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity that would necessitate relief under the Act.  *Coleman*, 183 Ill. 2d at 380.  At this stage, the court is not permitted to engage in any fact-finding or credibility determinations, as all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true. *Id.* at 385.

¶ 20    Further, at the first stage, the petition need set forth only the "gist" of a constitutional claim and only a limited amount of detail; it need not set forth the claim in its entirety. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). Moreover, the petition need not include legal arguments or citations to legal authority. *Id.* at 244, 258. Our supreme court in *Hodges* clarified that "gist" does not refer to the legal standard used in our review. "[O]ur use of the term 'gist' describes what the defendant must allege at the first stage; it is not the legal standard used by the circuit court to evaluate the petition, under section 122-2.1 of the Act, which deals with summary dismissals. Under that section, the 'gist' of the constitutional claim alleged by the defendant is to be viewed within the framework of the 'frivolous or * * * patently without merit' test." *Hodges*, 234 Ill. 2d at 11.

¶ 21    Here, the defendant first argues that he lost his right to appeal through no fault of his own because his pleadings got lost in the mail. However, that is not the argument he raised in his postconviction petition. In his petition, the defendant claimed that he filed an appeal on the same day that he was sentenced. However, he did not assert that he timely filed a motion to withdraw his guilty plea and to vacate his sentence. Rather, he stated that he sent a letter to the trial court seeking to withdraw his plea and vacate his sentence on August 14, 2018. As the defendant was required to file those motions within 30 days of his guilty plea on June 21, 2018, his failure to do so renders patently without merit his claim that he lost his right to appeal through no fault of his own.

¶ 22    The defendant urges that in considering his petition, we should look to other parts of the record which support his assertion on appeal that he attempted to timely file the requisite motions to preserve his right to appeal. However, at a hearing on November 15, 2018, the defendant informed the trial court that he only wanted it to consider what he had filed on November 2, 2018,

as his postconviction petition.  As such, neither this court nor the trial court has any obligation to further search the record to find something that supported the defendant's claim.  See *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006) (claim forfeited for appellate review if not raised in postconviction petition); *People v. Borizov*, 2019 IL App (2d) 170004, ¶ 20 (trial court was not under a duty to independently explore all potential, yet not clearly identified, constitutional violations that might have befallen defendant).

¶ 23     We next turn to the defendant's argument that he received ineffective assistance of counsel because his counsel labored under a conflict of interest.  Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Under Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced the defendant.  *Strickland*, 466 U.S. at 687.  To demonstrate performance deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness.  *People v. Edwards*, 195 Ill. 2d 142, 163 (2001).  To show sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  If a case can be disposed of on the ground of lack of sufficient prejudice, the court need not consider the quality of the attorney's performance.  *Id.* at 697.

¶ 24     A defendant is entitled to conflict-free representation.  *People v. Morales*, 209 Ill. 2d 340, 345 (2004).  "Effective assistance means assistance by an attorney whose allegiance to his client is not diluted by conflicting interests." *People v. Spreitzer*, 123 Ill. 2d 1, 13-14 (1988).  To show an actual conflict when a defendant did not apprise the court of the potential conflict prior to his conviction, "a defendant must point to some specific defect in his counsel's strategy, tactics, or

decision making attributable to the conflict." *Id.* at 18. A defendant must show an actual conflict of interest that adversely affected his counsel's performance. Speculative allegations and conclusory statements are not sufficient to establish that an actual conflict of interest affected counsel's performance. *Morales*, 209 Ill. 2d at 349.

¶ 25 In his petition, the defendant alleged that, even though he was innocent, his attorney thought that he was "100% guilty." The petition further alleged that his attorney told him that if he did not accept the plea deal he would have to "come up with $10,000 to go to trial." On appeal, the defendant insists that his defense counsel's demanding $10,000 to take the case to trial coerced him into pleading guilty.

¶ 26 We disagree with the defendant's assessment that his attorney's alleged statements rose to the level of coercion. A criminal defense attorney has a duty to candidly advise his client as to the direct consequences of accepting or rejecting a plea offer (*People v. Blommaert*, 237 Ill. App. 3d 811, 817 (1992)), and to inform his client of the possible and probable outcomes if a defendant chooses to proceed to trial (see *People v. Bien*, 277 Ill. App. 3d 744, 751 (1996)). One of the obvious consequences if a defendant chooses to take a matter to trial rather than to resolve the issue sooner is that his legal expenses will increase. It is not improper for an attorney to share this basic information with his client. It was also not improper for defense counsel to inform the defendant that the evidence was sufficient to convict the defendant of the charged crimes. The mere fact that the defendant found such information to be unpleasant or unsettling does not turn his attorney's sharing of that information into coercion.

¶ 27 In so ruling, we find the defendant's reliance on *People v. Falls*, 235 Ill. App. 3d 552, 558 (1992) and *Daniels v. United States*, 54 F.3d 290, 294 (7th Cir. 1995) to be misplaced. In both of those cases there was an ongoing fee dispute and allegations or evidence that the dispute was

impacting defense counsel's ability to effectively represent his client. See *Falls,* 235 Ill. App. 3d at 558 (trial counsel provided ineffective assistance where he unsuccessfully moved to withdraw and told the trial court that he could not "concentrate and give [his] best" representation at trial unless he was paid a sum of money greater than the defendant could afford); *Daniels*, 54 F.3d at 294 (defendant's allegations that his attorney said he would not take the defendant's case to trial without being paid the remaining $8,000 that the defendant owed him were sufficiently specific to warrant an evidentiary hearing to address whether attorney's pecuniary interests adversely affected his performance). Here, the defendant neither suggests that there was a fee dispute between him and his attorney nor alleges that his attorney gave him any indication that he could not effectively represent him at trial. As such, the trial court did not err in finding meritless the defendant's allegation that his attorney coerced him into pleading guilty by telling him how much it would cost to go to trial.

¶ 28                                 III. CONCLUSION

¶ 29     For the reasons stated, we affirm the trial court's decisions in both appeal No. 2-18-0830 and appeal No. 2-19-0109.

¶ 30     Affirmed.